UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE WOOD**

-------------------------------------------------

**06 CV 0409**

ARTHUR N. ABBEY,

Index No.

Plaintiff,

**COMPLAINT**

-against-

**JURY TRIAL DEMANDED**

THEODORE C. SKOKOS, 3F PARTNERS LIMITED
PARTNERSHIP II, 3F MANAGEMENT II, LLC and
3F THERAPEUTICS, INC.,

Defendants.



RECEIVED
JAN 19 2006
U.S.D.C. S.D. N.Y.
CASHIERS

-------------------------------------------------

Plaintiff, upon personal knowledge as to himself, his own acts and communications to which he was a party, and as to all other matters, upon information and belief, alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action pursuant to federal securities law and the common law of fraud and negligent misprepresentation, seeking rescission of a transaction pursuant to which Plaintiff was induced by defendants, through false representations and material omissions upon which Plaintiff reasonably relied, to invest $4 million in defendant 3F Therapeutics, Inc., through a limited partnership, defendant 3F Partners

Limited Partnership II ("3F Partners"). Alternatively, Plaintiff seeks judgment granting compensatory and other damages for the loss he has suffered as a result of defendants' wrongful conduct.

## JURISDICTION AND VENUE

2. This action is brought pursuant to Sections 10(b) and of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. 78j, and Rule 10b-5 of the Securities and Exchange Commission, as well as under the common law of the State of New York. This Court has jurisdiction in this action pursuant to Section 27 of the 1934 Act, 15 U.S.C. 78aa, and pursuant to the supplemental jurisdiction of this Court. This Court also has original jurisdiction of the common law New York State claims in this action under 28 U.S.C. Section 1332 (a) (1), because the amount in controversy exceeds $75,000 and the Plaintiff is a citizen of a different state than each of the defendants. Venue is appropriate in this District because Plaintiff is a resident of the District and many of the acts constituting the wrongs alleged occurred in and/or had their primary effect in this District.

## PARTIES TO THE ACTION

3. Plaintiff Arthur N. Abbey ("Plaintiff") is an individual and a resident and citizen of New York, New York. In April 2005, Plaintiff was asked by defendant Skokus, an acquaintance of Plaintiff, acting for himself

and as agent for the other defendants, to make a short term investment of $4,000,000 in a privately held company, defendant 3F Therapeutics, Inc. ("3F Therapeutics" or the "Company") to permit the Company to "window dress" its balance sheet, for the purpose of consummating negotiations which had reached an advanced stage and which, according to representations to Plaintiff by Skokos, would soon lead to a cash sale of 3F Therapeutics to another company.

4. Defendant Theodore Skokos ("Skokos") is an individual who is a citizen of the State of Texas, residing at 2801 Turtle Creek Blvd., Apt. 6E, Dallas, Texas. He is a founder and Chairman of the Board of Directors of defendant 3F Therapeutics and a principal and registered agent of defendant 3F Therapeutics and a principal and registered agent of defendant 3F Management II LLC. He is also President and a director of Cardiac Concepts, Inc., a major shareholder of 3F Therapeutics.

5. Defendant 3F Partners is a limited partnership registered under the laws of the State of Texas. Its offices are listed at the same address as its General Partner, defendant 3F Management II LLC and defendant Skokos, 2801 Turtle Creek Blvd, 6E, Dallas, Texas.

6. Defendant 3F Management II LLC ("3F Management") is a limited liability corporation which is the general partner of defendant 3F

Partners and has its principal place of business at 2801 Turtle Creek Blvd. 6E, Dallas, Texas.

7. Defendant 3F Therapeutics, Inc. ("3F Therapeutics") is a corporation formed under the laws of the State of Delaware, having its headquarters at 20412 James Bay Circle; Lake Forest, CA 92630. 3F Therapeutics is a privately held company formed in 1998 to develop, manufacture and market cardiac and circulatory medical devices. The Company is privately owned by shareholders including 3F Partners, which owns approximately 12 percent of the equity of the Company, as well as the following investors: Boston Scientific Corporation, Natick, Massachusetts; Cardiac Concepts, Inc., Little Rock, Arkansas; Domain Associates, Princeton, New Jersey; and 3i Bioscience, London, England.

## FACTUAL ALLEGATIONS

8. In February 2005 defendant Skokos, from his home and/or place of business in Dallas, Texas, contacted Plaintiff at his place of business in New York, New York, by phone, concerning defendant 3F Therapeutics. Skokos told Plaintiff that 3F Therapeutics was a successful company developing cardiac products such as stents for use in treating heart and vascular problems. Skokos told Plaintiff that two purchasers, one of which was Medtronics, Inc., had made firm offers to purchase all of 3F

4

Therapeutics or its equity securities for "9 figures," or not less than $6 per share for some 15 million shares outstanding. Skokos further represented to Plaintiff that 3F Therapeutics had $8 million of debt on its balance sheet, and that the sale of the Company to one of the current bidders would be facilitated if the balance sheet could be strengthened by increasing the cash or equivalent current assets on the books of the Company. Skokos represented that the Company had sufficient working capital to maintain its business for the foreseeable future.

9. Defendant Skokos, during the course of several telephone conversations, over a period from mid-February to mid-March 2005, asked plaintiff to make an investment of about $4 million in 3F Therapeutics for the purpose of providing the needed "window dressing" to the Company's balance sheet. Skokos emphasized that the investment was not needed by the Company to provide working capital but only to make the 3F Therapeutics balance sheet look stronger in order to expedite the sale of the Company to one of the interested offerors Skokos had described to Plaintiff. Skokos sent Plaintiff a schedule of 2004 cash flow and a balance sheet as of year end 2004. These represented that the Company held over $4 million in cash going into 2005 and had $8 million of long term debt. Skokos represented that these schedules showed that 3F Therapeutics was in a strong

financial position and could operate without additional capital infusion for many months if needed to consummate the sale of the Company. Skokos represented that such an investment was without risk to Plaintiff's investment principle and would in fact result in a relatively short time in substantial profit, as a result of the offers for the Company and the intention of 3F Therapeutics, of which Skokos is the Chairman of the Board of Directors, to sell its business.

10.   Defendant Skokos initially proposed that Plaintiff purchase 1.8 million shares of the equity stock of the Company for $2.25 per share. Plaintiff expressed his interest in such an investment, on the understanding from everything Skokos had represented that the investment would be for a relatively short duration and that the principal capital contribution and an increase in value of the equity purchased would be realized upon the sale of the Company. Plaintiff was induced to agree to such an investment by the representations by Skokos that the offers for 3F Therapeutics would lead more quickly to consummation of the sale of the Company if its balance sheet showed additional capital investment and by the representations that the Company was in good financial condition and was not seeking additional investment because of any working capital need or deficiency.

11. In fact, the offers and negotiations described by Skokos were not at an advanced stage and were still subject to substantial due diligence investigation by the interested potential purchasers. Further, the financial condition of 3F Therapeutics was not as represented by Skokos, as the Company was using cash at a rapid rate in order to try to develop approved and salable products and did not have sufficient working capital to maintain operations for more than a few months without substantial additional borrowing or capital infusion. These facts were known to defendant Skokos or were negligently or recklessly disregarded by him when he made false representations to Plaintiff and concealed material facts from Plaintiff concerning the nature of the interest expressed by potential purchasers of the Company and the true financial condition of the Company.

12. Plaintiff was induced to agree to invest in 3F Therapeutics by defendants' misrepresentations and concealment of the material facts described above. Plaintiff would not have agreed to invest $4 million in the Company had he believed or known that no meaningful firm offers had been made by Medtronic and another potential purchaser, that the consummation of the sale of the Company which Skokos described was not imminent and was, in fact, unlikely, and that the financial condition of the Company was so tenuous that Skokos and 3F Therapeutics were desperate to obtain

additional capital to try to salvage a sale to some potential acquirer before 3F Therapeutics ran out of money to maintain its operations.

13. Plaintiff intended to borrow money for the investment in 3F Therapeutics, believing, in reliance on the representations by Skokos, that the load could be repaid within a relatively short time from the proceeds of the sale for cash of the Company. Plaintiff explained this load to Skokos in March 2005, before making the investment in 3F Therapeutics. Skokos told Plaintiff that the sale and return of capital and a profit would be achieved in a relatively short time and that the only concern would be that the capital gain would likely be short term and taxable at the higher short term capital gain rates.

14. Skokos further asked for agreement by Plaintiff to pay to Skokos 20% of the profit Plaintiff made on the 3F Therapeutics investment, stating to Plaintiff that Skokos was entitled to share in the profit because it was only Skokos's management and control position at 3F Therapeutics and his acquaintance with Plaintiff which permitted Plaintiff to benefit from the highly profitable investment opportunity in 3F Therapeutics.

15. In late February or early March, 2005, Plaintiff agreed, in reliance on the representations and non-disclosures described above, to make an investment of approximately $4 million in the Company. Shortly

thereafter, defendant Skokos again contacted Plaintiff to explain that the investment in 3F Therapeutics should be made through a limited partnership rather than directly in securities of 3F Therapeutics. Plaintiff and certain other persons unkown to Plaintiff would purchase a limited partnership interest in defendant 3F Partners Limited Partnership II, with Plaintiff paying $4 million for two-thirds of the limited partnership interest. Plaintiff told defendant Skokos that he had no objection to this form of investment or any other form, so long as the cash Plaintiff provided served to improve the appearance of the balance sheet of 3F Therapeutics and facilitated the sale of the Company, as Plaintiff and Skokos had previously discussed, and so long as the form of investment did not hinder the return of the $4 million cash and the agreed 80% portion of any profits to Plaintiff soon after the sale of 3F Therapeutics. Skokos assured Plaintiff that the use of the limited partnership vehicle would not adversely affect these important elements of the transaction, because Skokos was able to control them. Based on their representations, Plaintiff agreed to proceed with the investment.

16. On March 23, 2005, Skokos sent a 3F Partners Limited Partnership II agreement, signed by Skokos for the general partner, to Plaintiff. On or about March 29, 2005, Plaintiff wired $4,000,000 to the account of 3F Partners.

17. Nine weeks later, on or about June 12, 2005, Plaintiff received a memo from Skokos addressed to Plaintiff and the other limited partners of 3F Partners. The memo stated, *inter alia*,

> In May, we completed Round E financing for $6,000,000, which gave 3F [Therapeutic] enough financial resources to help negotiate from a position of strength with several companies interested in 3F. . . . During the last six months, 3F received two letters of intent from large medical technology companies for acquisition of 3F. One offer was for cash and the other was for stock in the potential acquirer. After many months of due diligence with both companies no deal was proposed that was acceptable to 3F. In February, 3F received an offer from Edward Life Sciences (formerly Baxter) to rework its contract for the exclusive license of its PVT valve delivery system to 3F. . . . We negotiated over the next three months and three weeks ago announced a restructured PVT agreement with Edwards . . . For this contract restructuring, Edwards paid 3F $25 million with $23 million having been received in cash three weeks ago and the balance of $2 million to be received upon completion of our valve tissue supply agreement with Edwards . . . .
>
> 3F is in the best financial shape in its history and the Board of Directors is considering all options for the future of the company. As of the close of the Round E financing, I was named Chairman of the Board of Directors of 3F. As Chairman, I will have more control over the future of 3F and our investment. One of the first steps I took was having 3F engage the services of UBS as 3F's investment banking advisors. Without going into details, I can only tell you that we are still "in play" and will be working closely with UBS regarding the future course of 3F.

18. Plaintiff subsequently inquired of Skokos, on July 25, 2005, what plans 3F had for a distribution of the $25 million cash that it had received from Edwards. Plaintiff heard nothing from Skokos,

10

and on September 22, 2005, sent a second inquiry concerning 3F. In response to that inquiry, Skokos replied on September 25, 2005, that 3F Therapeutics had a short term standstill agreement with a publicly traded company and was waiting for another offer from a foreign company. Skokos stated that he was "optimistic that we will have a deal fairly soon."

19. In response to a further request by Plaintiff for information on October 27, 2005, Skokos responded that 3F had a "letter of interest" with a public company "that will be worked into a contract of sale by December 1." Skokos further stated that the deal would be good for Plaintiff but only "so so" for those "who bought their stock at $3.90".

20. In late December, 2005, Plaintiff again inquired about the progress of efforts to sell 3F Thereapeutics and learned that the Company was discussing a stock-for-stock transaction involving illiquid, restricted shares of a foreign company at a value substantially less than the equivalent per share investment of Plaintiff in the Company. Plaintiff also learned in December 2005 that rather than planning to distribute capital to 3F Partners after $25 million in cash had been received from Edwards, the Company had repaid the $8

million in debt that had been described as "long term" on the Company's balance sheet. Plaintiff also learned that the Company was spending over $1 million per month during the eight months since Plaintiff's investment, and had only $13.8 million left, even though the Company had, according to its balance sheet, started the year with over $4 million in cash and received an additional $25 million from the Edwards contract restructuring.

21. Contrary to the representations made to Plaintiff by Skokos individually and as agent for 3F Therapeutics, 3F Management and 3F Partners, the likelihood of profits to Plaintiff as of March 2005 and thereafter was nil, and substantial loss of capital by Plaintiff was almost certain.

22. Defendants caused the aforesaid misrepresentations to be made either negligently or knowing them at all times to be materially false or in reckless disregard of the truth.

23. Plaintiff relied on the false representations and, reasonably believing those representations and not being informed of the material facts concealed by defendants, purchased the two-thirds interest in 3F Partners. Plaintiff would not have purchased this partnership interest nor otherwise invested in 3F Therapeutics but for

the materially false and misleading information provided to Plaintiff and the material information withheld from Plaintiff.

24. As a result, Plaintiff has been damaged and his original investment capital of $4,000,000 has been substantially depleted.

## COUNT I

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

25. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

26. This Count is asserted against all defendants for violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

27. Prior to Plaintiff's purchase of an interest in 3F Partners, defendants carried out a plan, scheme and course of conduct which was intended to and did: (i) deceive Plaintiff, as alleged herein and (ii) cause Plaintiff to invest in 3F Therapeutics by purchasing an interest in 3F Partners that he would not have purchased had Plaintiff known the truth. In furtherance of this unlawful scheme, plan and course of conduct, defendants, acting primarily through defendant Skokos, took the actions set forth hereinabove.

28. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiff in causing him to purchase an interest in defendant 3F Partners and thus, in 3F Therapeutics, in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct alleged.

29. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a course of conduct to deceive Plaintiff by misreperesenting and concealing adverse material information about the business and operations of 3F Therapeutics, as specified herein.

30. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Defendants' material misrepresentations and/or

omissions were done knowingly or recklessly and for the purpose of concealing from Plaintiff the truth concerning 3F's efforts to be acquired, the operating condition and business prospects of the Company, and effectively induced Plaintiff to invest in 3F Therapeutics. As demonstrated by defendants' misstatements concerning 3F Therapeutics, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

31. Plaintiff, without knowledge of the falsity of the statements made by Defendants and of the material omissions contained therein, and believing such statements to be true and complete, and in reasonable and justifiable reliance upon the statements and representations made by Defendants, as previously set forth herein, purchased an interest in 3F Partners and thus in 3F Therapeutics, in reliance upon the truth and completeness of the statements made by defendants. Plaintiff would not have purchased the interest in 3F Partners but for his reliance upon the statements and representations made by defendants in offering such interest for sale.

32. By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

33. As a direct and proximate result of defendants' wrongful conduct, Plaintiff suffered damages and is entitled to judgment rescinding the fraudulent purchase of 3F Partners securities, which securities he will tender upon such judgment, or alternatively to compensatory damages to be determined at trial.

## COUNT II

### Common Law Fraud and Deceit

34. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

35. This Count is asserted against all defendants for common law fraud and deceit.

36. Defendants falsely and fraudulently represented to Plaintiff, prior to Plaintiff's purchase of an interest in 3F Partners, that, as described above, 3F Therapeutics was engaged in advanced negotiations with potential acquirers of the Company that had made substantial offers to purchase the Company and that the Company was in good financial condition. These false representations were intended to and did: (i) deceive Plaintiff, as alleged

herein and (ii) cause Plaintiff to invest in 3F Therapeutics by purchasing an interest in 3F Partners that he would not have purchased had Plaintiff known the truth.

37. In addition, defendants omitted and failed to disclose, while under a duty to do so, numerous material facts in the course of its dealings with Plaintiff, including the material facts set forth herein.

38. These misrepresentations and omissions were known by defendants to be false when made and were made with the intent that Plaintiff would rely on them and to induce Plaintiff to invest in 3F Therapeutics.

39. Plaintiff, at the time these representations were made, did not know the truth but believed the defendants' representations to be true and reasonably relied upon them and was thereby induced to invest in 3F Therapeutics.

40. By reason of the foregoing, Plaintiff has been damaged and is entitled to judgment rescinding his purchase of a limited partnership interest in 3F Partners, which interest he continues to own and will tender to 3F Partners, or to an award of compensatory damages in an amount to be determined at the trial of this action, as well as punitive damages.

## COUNT III

### Negligent Misrepresentation

41. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 24, above, as if fully set forth herein.

42. This cause of action is brought by Plaintiff against all defendants based upon common law principles of negligent misrepresentation.

43. The defendants made and participated in the making of representations of fact to Plaintiff by means of various statements as alleged herein.

44. By making said misrepresentations, as alleged above, defendants made materially false statements to Plaintiff and failed to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiff, with the result that Plaintiff did not have all of the material facts necessary for an informed decision concerning an investment in 3F Therapeutics. Among the direct and proximate causes of said misrepresentations and omissions to state material facts was the negligence and carelessness of defendants, and the absence of any reasonable basis for belief in the truth of such statements.

45. Plaintiff, at the time these representations were made, did not know the truth but believed the defendants' representations to be true and reasonably relied upon them and was thereby induced to invest in 3F Therapeutics.

46. By reason of the foregoing, Plaintiff has been damaged and is entitled to judgment rescinding his purchase of a limited partnership interest in 3F Partners, which interest he continues to own and will tender to 3F Partners, or to an award of compensatory damages in an amount to be determined at the trial of this action, as well as punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment:

(A) Rescinding the purchase of the limited partnership interest of 3F Partners by Plaintiff and ordering defendants to return to Plaintiff the amount paid by Plaintiff, with pre-judgment and post-judgment interest, subject to Plaintiff tendering his interest in 3F Partners.

(B) Awarding compensatory damages to Plaintiff for the lost principal of his investment, together with interest thereon at the legal rate, plus additional general, consequential and incidental damages according to proof;

(C) Awarding general damages for all injuries resulting from fraud in an amount to be ascertained at trial;

(D) For such other and further legal and equitable relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully request a trial by jury of all issues so triable.

Dated: January 19, 2006

                                          Respectfully submitted,

                                          ABBEY GARDY, LLP

                                          Stephen T Rodd (STR 8228)
                                          212 East 39th Street
                                          New York, New York 10016
                                          (212) 889-3700