Andrew L. Morrison (AM-1071)
K&L GATES LLP
599 Lexington Avenue
New York, New York  10022
(212) 536-3900
andrew.morrison@klgates.com

Attorneys for Defendant
3F Therapeutics, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

| | | |
|---|---|---|
| ARTHUR N. ABBEY, | : | Civil Action No. 06 CV 0409 (KMW) |
| Plaintiff, | : | |
| - against - | : | |
| 3F THERAPEUTICS, INC., | : | |
| Defendant. | : | |

-----------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT 3F THERAPEUTICS, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT WITH PREJUDICE

**K&L GATES LLP**
Attorneys for Defendant
3F Therapeutics, Inc.
599 Lexington Avenue
New York, New York 10022
212-536-3900

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

FACTS ......................................................................................................................3

ARGUMENT ............................................................................................................9

I.    THE AMENDED COMPLAINT FAILS TO STATE A SECURITIES
      FRAUD CLAIM AGAINST 3FTI...................................................................9

      A.    The Applicable Standard For A Rule 12(b)(6) Motion .........................9

      B.    The Amended Complaint Fails To State A Securities Law Claim Under
            Section 10(b) Of The Exchange Act And Rule 10b-5 .........................10

            1.    Plaintiff Lacks Standing To Assert A Securities Fraud
                  Claim Against 3FTI .................................................................10

            2.    Plaintiff's Alleged Reliance Is Unreasonable As A Matter
                  Of Law .....................................................................................12

            3.    Plaintiff's Allegations Concerning Skokos' Beliefs Or
                  Expectations Are Not Actionable Under Section 10(b)
                  Or Rule 10b-5 ..........................................................................14

            4.    Plaintiff Has Failed To Allege Facts Sufficient To Support
                  A Strong Inference Of 3FTI's Scienter.....................................17

            5.    Plaintiff Has Failed To Allege Causation Or Damages ..............20

II.   THE AMENDED COMPLAINT FAILS TO STATE A COMMON LAW
      CLAIM .........................................................................................................21

      A.    Plaintiff's Common Law Claims Suffer From The Same Fatal
            Defects As His Securities Fraud Claims................................................21

      B.    The Amended Complaint Fails To State A Negligent
            Misrepresentation Claim ......................................................................22

III.  THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH
      PREJUDICE AGAINST 3FTI.......................................................................23

CONCLUSION.......................................................................................................25

## TABLE OF AUTHORITIES

### CASES

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007) ..................................9, 18

Ackerman v. Nat'l Prop. Analysts, Inc., 887 F. Supp. 494 (S.D.N.Y. 1992) ...............................11

Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40 (2d Cir. 1991)..................................................3n.1

Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 105 S. Ct. 2622 (1985).....19, 19n.5

In re Bayou Hedge Fund Litig., 534 F. Supp. 2d 405 (S.D.N.Y. 2007) ........................................22

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...............9

In re Blech Sec. Litig., 961 F. Supp. 569 (S.D.N.Y. 1997) ...........................................................10

Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985) ........................10

Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S. Ct. 1917,
    44 L. Ed. 2d 539 (1975)...........................................................................................................10

Bolger v. Laventhol, Krekstein, Horwath & Horwath, 381 F. Supp. 260
    (S.D.N.Y. 1974)..................................................................................................................11, 12

Brown v. E.F. Hutton Group, 735 F. Supp. 1196 (S.D.N.Y. 1990)...............................................14

CPC Int'l Inc. v. McKesson Corp., 70 N.Y.2d, 268, 514 N.E. 2d 116, 519 N.Y.S.2d
    804 (N.Y. 1987) ........................................................................................................................22

Citibank, N.A. v. K-H Corp., 968 F.2d 1489 (2d Cir. 1992)........................................................21

De Jesus v. Sears, Roebuck & Co., 87 F.3d 65 (2d Cir. 1996).....................................................10

Dura Pharm. Inc. v. Broudo, 544 U.S. 336, 125 S. Ct. 1627 (2005) ...........................................20

Dyncorp v. GTE Corp., 215 F. Supp. 2d 308 (S.D.N.Y. 2002)....................................................14

Elliott Assocs. L.P. v. Covance, Inc., No. 00 Civ 4115 (SAS), 2000 WL 1752848
    (S.D.N.Y. Nov. 28, 2000) .........................................................................................................15

Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189
    (2d Cir. 2003)............................................................................................................................13

Faulkner v. Verizon Commc'ns, Inc., 156 F. Supp. 2d 384 (S.D.N.Y. 2001).............................15

Faulkner v. Verizon Commc'ns, Inc., 189 F. Supp. 2d 161 (S.D.N.Y. 2002).............................15

Ganino v. Citizens Utils. Co., 228 F.3d 154 (2d Cir. 2000) .........................................................17

Goldberg v. Meridor, 567 F.2d 209 (2d Cir. 1977) ......................................................................17

Hampshire Equity Partners II, L.P. v. Teradyne, Inc., 04 Civ. 3318 2005 U.S. Dist.
LEXIS 5261 (S.D.N.Y. March 30, 2005) ....................................................................22n.8, 23

Harsco Corp. v. Segui, 91 F.3d 337 (2d Cir. 1996) ..........................................................12, 14, 21

In re Health Mgmt. Syss., Inc. Sec. Litig., No. 97 CIV. 1986 (HB) 1998 WL 283286
(S.D.N.Y. Jun. 1, 1998) .........................................................................................................18

Kalnit v. Eichler, 264 F.3d 131 (2d Cir. 2001) ......................................................................17, 19

Kassover v. UBS AG, No. 08 Civ. 02753 (LMM), 2008 WL 5331812
(S.D.N.Y. Dec. 19, 2008)........................................................................................................23

Klamberg v. Roth, 473 F. Supp. 544 (S.D.N.Y. 1979)................................................................17

L'Europeene de Banque v. La Republica de Venezuela, 700 F. Supp. 114
(S.D.N.Y. 1988)........................................................................................................................10

Landy v. Mitchell Petroleum Tech. Corp., 734 F. Supp. 608 (S.D.N.Y. 1990) .....................10, 11

Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161 (2d Cir. 2005).............................................20

Levine v. Seilon, Inc., 439 F.2d 328 (2d Cir. 1971) .............................................................21n.7

Marx & Co., Inc. v. Diners' Club, Inc., 550 F.2d 505 (2d Cir. 1977) .........................................16

McLoughlin v. Altman, No. 92 Civ. 8106 (KMW), 1993 WL 362407
(S.D.N.Y. Sept. 13, 1993) .......................................................................................................24

Morse v. Weingarten, 777 F. Supp. 312 (S.D.N.Y. 1991)...........................................................22

Nisselson v. Lernout, 469 F.3d 143 (1st Cir. 2006)..............................................................19n.5

Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.,
369 F.3d 27 (2d Cir. 2004)......................................................................................................11

Pappas v. Harrow Stores, Inc., 140 A.D.2d 501, 528 N.Y.S.2d 404 (2d Dep't 1988) ................23

Pinter v. Dahl, 486 U.S. 622, 108 S. Ct. 2063 (1988) ........................................................19n.5

Rodas v. Manitaras, 159 A.D.2d 341, 552 N.Y.S.2d 618 (1st Dep't 1990) ................................13

In re QLT Inc. Sec. Litig., 312 F. Supp. 2d 526 (S.D.N.Y. 2004)..........................................21, 24

Rich v. Maidstone Fin., Inc., 98 Civ. 2569 (DAB), 2001 U.S. Dist. LEXIS 3167
(S.D.N.Y. Mar. 23, 2001) .......................................................................................................22

Ross v. Bolton, 904 F.2d 819 (2d Cir. 1990) .......................................................................19n.5

Schlaifer Nance & Co., Inc. v. Estate of Warhol, 927 F. Supp. 650 (S.D.N.Y. 1996),
aff'd, 119 F.3d 91 (2d Cir. 1997)............................................................................................21

Sedona Corp. v. Ladenburg Thalmann & Co., Inc., No. 03 Civ.3120 (LTS) (THK),
2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005)...........................................................................23

Sheppard v. TCW/DW Term Trust 2000, 938 F. Supp. 171 (S.D.N.Y. 1996)........................17n.4

Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124 (2d Cir. 1994) ..............................................19n.6

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S. Ct. 2499,
    168 L. Ed. 2d 179 (2007) ......................................................................................18, 19n.6

Travellers Indem. Co. of Illinois v. CDL Hotels USA, Inc., 322 F. Supp. 2d 482
    (S.D.N.Y. 2004) ...............................................................................................................13

Tufano v. One Toms Point Lane Corp., 64 F. Supp. 2d 119 (E.D.N.Y. 1999).........................3n.1

UST Private Equity Investors Fund, Inc. v. Salomon Smith Barney, 288 A.D.2d 87,
    733 N.Y.S.2d 385 (1st Dep't 2001) ...............................................................................22

In re Ultrafem Inc. Secs. Litig., 91 F. Supp. 2d 678 (S.D.N.Y. 2000) ...........................................17

United Safety of Am., Inc. v. Consol. Edison Co. of New York, Inc., 213 A.D.2d 283
    (1st Dep't 1995) ..............................................................................................................23

Weiss v. Ganz, 26 F. Supp. 2d 655 (S.D.N.Y. 1998) ...................................................................11

## STATUTES

17 C.F.R. § 240.10b-5 (2006) ............................................................................................. passim

15 U.S.C. § 78j(b) ................................................................................................................ passim

15 U.S.C. § 78u-4 ......................................................................................................1, 19n.6, 24

15 U.S.C. § 78u-4(b)(4) .............................................................................................................20

Fed. R. Civ. P. 9(b) ..........................................................................................1, 19n.6, 22n.8, 24

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 9, 24

N.Y. Gen. Bus. Law § 352(1) (McKinney 2007) ......................................................................22

## PRELIMINARY STATEMENT

Defendant 3F Therapeutics, Inc. ("3FTI") respectfully submits this memorandum of law in support of its motion for an order, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act ("PSLRA") 15 U.S.C. § 78u-4, dismissing the Amended Complaint, with prejudice.  The Amended Complaint represents a second attempt by Plaintiff to state securities fraud and related claims against 3FTI, a Delaware corporation, arising out of his purchase of a 66% limited partnership interest in 3F Partners Limited Partnership II, a Texas limited partnership (the "Limited Partnership").  This Court dismissed the original Complaint against 3FTI with prejudice by Order dated August 6, 2007.  The United States Court of Appeals for the Second Circuit, by Summary Order dated December 18, 2008, affirmed the dismissal but remanded the case to allow Plaintiff another opportunity to plead his claims.

In the Amended Complaint ("Am. Comp."), Mr. Abbey asserts claims against 3FTI based upon his belief that his investment in the Limited Partnership was a sure thing whereby he would quickly receive a profit of $6.5 million risk free.  Mr. Abbey was so convinced of this sure thing, he borrowed $4 million and, without any investigation, used the loan proceeds to purchase an interest in the Limited Partnership.  The Amended Complaint alleges that Mr. Abbey did so because he received a tip regarding an imminent cash sale of 3FTI from Mr. Theodore C. Skokos, a 3FTI director and, allegedly, the person at 3FTI "in charge of selling the company."

Thus, incredibly, the Amended Complaint alleges that Mr. Abbey -- a highly experienced and sophisticated securities plaintiffs' lawyer -- traded on inside information obtained from a director of 3FTI as part of an alleged scheme whereby Mr. Skokos and Mr. Abbey would divide the $6.5 million profit 80% for Abbey and 20% for Skokos.  In order to get his profit, Mr. Abbey

agreed to invest in the Limited Partnership under terms set forth in its limited partnership agreement which clearly and explicitly contradicted Mr. Skokos' alleged oral representations and mandated that Mr. Abbey's limited partnership interest be held indefinitely, subject to the complete investment discretion of the general partner. When Mr. Skokos' surefire tip did not pan out as Mr. Abbey had hoped, he turned to the federal securities laws for insurance claiming surprise with respect to the long term nature of his investment in the Limited Partnership. With this action, Mr. Abbey attempts to create a "no-lose" situation arising out of his trade on Mr. Skokos' tip.

However, Mr. Abbey lacks standing to assert securities fraud claims against 3FTI because he cannot avoid the fact that he did not purchase any shares of 3FTI. Also, Mr. Skokos' alleged misrepresentations that Mr. Abbey's investment in the Limited Partnership was risk free and would return a substantial profit over a short period of time because 3FTI would soon be sold for cash are flatly contradicted by the terms of the limited partnership agreement that Mr. Abbey acknowledges receiving six days prior to his investment in the Limited Partnership. That agreement not only specifically states that Mr. Abbey's investment would be long term but also includes a merger provision whereby Mr. Abbey disclaimed reliance upon any prior oral agreement not contained in the limited partnership agreement. In addition, Mr. Abbey -- in his zeal to make a large profit on a sure thing -- did no investigation to confirm the alleged representations made by Skokos.

Accordingly, as a matter of law, and as set forth below, Mr. Abbey cannot allege any of the elements of his claims. He cannot allege reasonable reliance. He cannot allege 3FTI's scienter. He cannot allege that Skokos' optimistic statements concerning the imminent sale of

3FTI and the sort duration of Mr. Abbey's investment were actionable misrepresentations. He cannot allege loss causation and/or damages.

Similarly, the Amended Complaint fails to allege any specific facts to support a claim for common law fraud or negligent misrepresentation against 3FTI. Also, the negligent misrepresentation claim is pre-empted by New York's Martin Act, which precludes negligent misrepresentation claims arising out of the alleged purchase or sale of a security.

Plaintiff has now had ample opportunity to state a claim against 3FTI. He cannot do so. Accordingly, defendant 3FTI respectfully requests the Court to dismiss the Amended Complaint with prejudice.

## FACTS

The facts set forth below are taken primarily from the allegations in the Amended Complaint ("Am. Comp.") and The Agreement Of The 3F Partners Limited Partnership II ("Limited Partnership Agreement").[1] A copy of the Amended Complaint is annexed as Exhibit "A," a copy of the original Complaint is annexed as Exhibit "B"; and a copy of the Limited Partnership Agreement is annexed as Exhibit "C" to the accompanying affidavit of Andrew L. Morrison, sworn to March 31, 2009.

_____

[1]  On a motion to dismiss, the Court may consider documents appended to the Amended Complaint or incorporated in the Amended Complaint by reference and any matters of which judicial notice may be taken. See Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). A plaintiff may not avoid a court's consideration of a pertinent document by failing to append the document to the Amended Complaint. See Tufano v. One Toms Point Lane Corp., 64 F. Supp. 2d 119, 123-24 (E.D.N.Y. 1999) ("[T]he Court may consider documents annexed to the movant's papers which, although not annexed to the [Amended] [C]omplaint, plaintiff either had in his possession or had knowledge of and upon which he relied in bringing suit.") Here, Plaintiff refers to the Limited Partnership Agreement and alleges that he received the Limited Partnership Agreement six days prior to his investment in 3F Partners Limited Partnership II. (Am. Comp. ¶¶ 19, 21)

**The Parties**

Plaintiff Arthur N. Abbey ("Abbey") is a securities litigation attorney who resides in New York, New York. (Am. Comp. ¶ 5) Skokos was a director of 3FTI in February 2005. (Am. Comp. ¶ 7) Defendant 3FTI is a Delaware corporation with headquarters in Lake Forest, California. (Am. Comp. ¶ 6) 3FTI was a privately held company formed in 1998 to develop, manufacture and market cardiac and circulatory medical devices. (Am. Comp. ¶ 6) Non-party 3F Partners Limited Partnership II is a Texas limited partnership organized on or about March 8, 2005. (Morrison Aff. Ex. "C") 3F Partners Limited Partnership II sold a limited partnership interest to Mr. Abbey on or about March 29, 2005 in return for Mr. Abbey's investment of $4 million. (Am. Comp. ¶ 21) 3F Partners Limited Partnership II invested $6 million in 3FTI on or about April 18, 2005 in connection with 3FTI's Series E financing. (Morrison Aff. Ex. "D") In September 2006, 3FTI was acquired by ATS Medical, Inc. ("ATS"), a publicly traded company. (Am. Comp. ¶ 6)

**Skokos' Alleged Representations**

Starting in February 2005 and during the period February through March 2005, Skokos contacted Mr. Abbey about a sure thing -- an investment that was short term, would return substantial profit and was risk free. Skokos told Mr. Abbey that a company called 3FTI had received "firm offers" for cash and would be sold imminently. Skokos told Mr. Abbey that if he invested at $2.25 per share he quickly would be cashed out at at least $6.00 per share when the company was sold. (Am. Comp. ¶¶ 7, 11) This would generate a $6.5 million profit for Mr. Abbey.[2] Specifically, Skokos orally represented to Plaintiff that two purchasers, one of which

---

[2]    The Amended Complaint alleges that Skokos told Abbey that 3FTI had received cash offers for "not less than $6 per share." (Am. Comp. ¶ 7) The Amended Complaint alleges that the 3FTI shares were worth $2.25 per share at the time Abbey purchased his
Continued on following page

was Medtronics Inc., a public company, had made "firm offers" to purchase "all of 3FTI" for "9 figures." (Am. Comp. ¶ 7) Skokos allegedly further represented orally "that the sale of [3FTI] to one of the current bidders would be facilitated if the balance sheet could be strengthened by increasing the cash or equivalent current assets on the books of the [c]ompany." (Am. Comp. ¶ 8) Accordingly, Skokos allegedly asked Plaintiff to make an investment of $4 million to provide "window dressing" to the company's balance sheet. (Am. Comp. ¶ 9) Skokos sent to Plaintiff a 2004 cash flow and balance sheet as of year end 2004 that confirmed Skokos' oral representations that 3FTI had $8 million of long-term debt. (Am. Comp. ¶ 20) Skokos allegedly told Plaintiff that his investment was "without risk" and that the investment "would be short-term and result in substantial profit upon the sale of the [c]ompany." (Am. Comp. ¶ 10) Skokos allegedly told Plaintiff that "the investment would be for a relatively short duration and that a substantial profit on the investment would soon be realized." (Am. Comp. ¶ 11)

In or about March 2005, Skokos told Mr. Abbey that he should invest in 3F Partners Limited Partnership II. (Am. Comp. ¶ 16) Skokos allegedly told Mr. Abbey that his investment in the Limited Partnership would be risk free and would return a substantial profit in a short duration. (Am. Comp. ¶ 17-18) Skokos assured Mr. Abbey that his investment in the Limited Partnership would not "adversely affect" the "important elements" of substantial profit, short term and no risk. (Am. Comp. ¶ 18) On or about March 23, 2005, Skokos sent the Limited

_____

Continued from previous page

    66% interest in the Limited Partnership. (Am. Comp. ¶ 11; see also Morrison Aff. Ex. "C" at p. 76) On or about April 18, 2005, the Limited Partnership purchased 2,666,667 shares of 3FTI for a purchase price of $6,000,000.75 or $2.25 per share. (Morrison Aff. Ex. "D," at Schedule 1.1) Accordingly, Abbey's 66% Limited Partnership interest equaled 1,760,000 shares valued at $3,960,000. With a purchase price for 3FTI of $6 per share, Abbey's interest would equal $10,560,001. After repaying his $4 million loan, Abbey would clear $6,560,001.

Partnership Agreement to Plaintiff.  (Am. Comp. ¶ 19)  Six days after receiving the Limited

Partnership Agreement, on or about March 29, 2005, Plaintiff wired $4,000,000 to the account of

3F Partners Limited Partnership II.  (Am. Comp. ¶ 21)[3]  Plaintiff borrowed $4 million to

purchase his interest in the Limited Partnership, expecting a quick return of that money and a

profit of $6.5 million.  (Am. Comp. ¶ 23)

**The Limited Partnership Agreement**

The 74-page Limited Partnership Agreement received by Mr. Abbey prior to his

investment sets forth his rights and obligations as a limited partner and directly contradicts

Skokos' alleged misrepresentations with respect to a short term, risk free investment.  Nowhere

in the Limited Partnership Agreement is there any mention of the use of Plaintiff's investment to

"provid[e] 'window dressing' to the Company's balance sheet" or any discussion of "the return

of the $4 million cash and the agreed 80% portion of any profits to Plaintiff soon after the sale of

3F Therapeutics."  (Am. Comp. ¶¶ 9, 17)

To the contrary, Plaintiff explicitly acknowledged in the Limited Partnership Agreement

that his investment would be long term.  For instance, paragraph 7.6, captioned "No Withdrawal

of Partner's Contribution," provides:

> A Partner may not withdraw from the Partnership prior to its
> dissolution, nor may a Partner withdraw any part of his
> contribution (except to the extent that distributions made or
> deemed to be made are considered as such by law) except as
> provided in Article XIII, and no such return of contributions shall
> be made unless all liabilities of the Partnership, except liabilities to
> the General Partner and to the Limited Partners on account of their
> contributions, have been paid, or unless there remains sufficient
> property in the Partnership to pay them.  No Partner shall have the

---

[3]    Plaintiff was not the only investor in the limited partnership.  Other limited partners
included Larry Norman, Elizabeth Jeffett Norman and 3F Texas Trust.  See Morrison
Aff. Ex. "C" at pp. 75-76.

> right to demand and receive property of the Partnership in return
> for its Capital Contribution.  No Partner shall be paid interest on
> any Capital Contribution.

(Limited Partnership Agreement ¶ 7.6)

In paragraph 16.1 of the Limited Partnership Agreement, Plaintiff acknowledged that he understood that:

> the Interests must be held indefinitely unless the Interests are
> subsequently registered under the Securities Act and applicable
> blue sky or state securities laws or an exemption from such
> registration is available.

(Limited Partnership Agreement ¶ 16.1(c)(iii))

In paragraph 16.1, Plaintiff represented that he was an "Accredited Investor" as such term is defined in Rule 501 of Regulation D under the Securities Act.  Plaintiff also agreed that he had "carefully read and is familiar with this Agreement and the Exhibits and Schedules hereto, and such Partner understands the risk and terms of investing in the Partnership."  (Limited Partnership Agreement ¶¶ 16.1(a), (d))

Also, the Limited Partnership Agreement contained a merger clause whereby Plaintiff disclaimed reliance upon any prior agreement not contained in the Limited Partnership Agreement.  (Limited Partnership Agreement ¶ 17.5)

Finally, Plaintiff agreed in the Limited Partnership Agreement to give the general partner complete discretion with respect to investment decisions for the limited partnership.  (Limited Partnership Agreement ¶ 5.1)

**Plaintiff Failed To Conduct Any Due Diligence**

The Amended Complaint alleges that Plaintiff invested in the Limited Partnership without any due diligence investigation.  The Amended Complaint fails to allege that Plaintiff asked to review the "firm offer" letters from the interested companies, failed to inspect the books

and records of 3FTI, failed to request the financing documents pursuant to which the Limited

Partnership invested in 3FTI and failed to speak with any officers of 3FTI.  Plaintiff did not

negotiate any of the terms of the Limited Partnership Agreement notwithstanding that he

received it six days prior to his investment and its terms plainly contradict Skokos' alleged oral

representations.  Plaintiff never asked to see drafts of the Series E Preferred Stock Purchase

Agreement executed by the Limited Partnership and 3FTI in connection with that financing.  (A

copy of that agreement and Schedule 1.1 are annexed as Exhibit "D" to the Morrison Affidavit.)

In the Series E Stock Purchase Agreement, the Limited Partnership -- the only investor listed on

the schedule of investors -- represented on behalf of its limited partners that it:

> has such knowledge and experience in financial and business
> matters as to be capable of evaluating the merits and risks of such
> Investor's prospective investment in the Shares; such Investor has
> had an opportunity prior to entering into this Agreement to ask
> questions of and receive answers from the Company concerning
> the terms and conditions of the offering of the Shares . . . ; such
> Investor has the ability to bear the economic risks of such
> Investor's prospective investment; and such investor is able,
> without materially impairing its financial condition, to hold the
> Shares for an indefinite period of time and to suffer complete loss
> on its investment.

Morrison Aff. Ex. "D" at ¶ 5.2(d) and Schedule 1.1.

## The Alleged Fraud

Plaintiff alleges that "despite Skokos' representation that 3F Therapeutics had received

'firm offers' as of February, 2005, 3F Therapeutics was in fact far from being acquired" and that

"in January, 2005, 3F Therapeutics had began to solicit bidders and found no interest."  (Am.

Comp. ¶¶ 28, 40)  Plaintiff alleges that he would not have purchased his interest in the Limited

Partnership "had he known that no meaningful cash offers had been made by Medtronic and

another potential purchaser, that the consummation of the sale of the [c]ompany was not

imminent and was, in fact, unlikely, and that the financial condition of the company was so

tenuous that 3F Therapeutics was desperate to obtain additional capital to try to salvage a sale to some potential acquirer before 3F Therapeutics ran out of money to maintain its operations." (See Am. Comp. ¶ 31)  Plaintiff bases his allegations of fraud upon his failure to obtain the return of his $4 million investment, even after 3FTI received $25 million from a license agreement involving its PVT valve delivery system.  (See Am. Comp. ¶¶ 22, 23)

**Plaintiff Has Alleged No Economic Loss**

Plaintiff can allege no economic loss in connection with this investment in the Limited Partnership.  In fact, it is a matter of public record that on or about January 23, 2006, 3FTI entered into a Merger Agreement with ATS Medical, Inc., a publicly traded corporation, and that transaction closed on September 29, 2006.  (Am. Comp. ¶ 6)  Accordingly, there are no allegations that 3F Partners Limited Partnership II's investment in 3FTI has been lost.

## ARGUMENT

## POINT I

## THE AMENDED COMPLAINT FAILS TO STATE A SECURITIES FRAUD CLAIM AGAINST 3FTI

**A.**    **The Applicable Standard For A Rule 12(b)(6) Motion**

For a complaint "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).  Ultimately, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 127 S. Ct. at 1960.  If plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."  Id.

In connection with a motion to dismiss, a court need only accept as true those well pled factual allegations and a court may disregard conclusory allegations and bald assertions of fact. De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996); L'Europeene de Banque v. La Republica de Venezuela, 700 F. Supp. 114, 122 (S.D.N.Y. 1988) ("legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness.").

**B.    The Amended Complaint Fails To State A Securities Law Claim Under Section 10(b) Of The Exchange Act And Rule 10b-5**

To state a cause of action under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, Plaintiff must allege,

> that in connection with the purchase or sale of securities, each defendant, acting with scienter, made a material false representation, or omitted to disclose material information, or engaged in a scheme to defraud, and that plaintiff's reliance on defendant's action caused plaintiff's injury.

In re Blech Sec. Litig., 961 F. Supp. 569, 580 (S.D.N.Y. 1997), citing Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57, 61 (2d Cir. 1985).

As set forth below, the securities fraud claim against 3FTI fails as a matter of law because the Amended Complaint has failed to allege:  (1) Mr. Abbey's standing to assert a claim under §10(b) and Rule 10b-5; (2) reasonable reliance; (3) that any of the alleged misrepresentations are actionable; (4) 3FTI's scienter; (5) causation; or (6) damages.

**1.    Plaintiff Lacks Standing To Assert A Securities Fraud Claim Against 3FTI**

In order to maintain a securities fraud claim under § 10(b) and Rule 10b-5, "a plaintiff must be an actual purchaser or seller of the security in question."  Landy v. Mitchell Petroleum Tech. Corp., 734 F. Supp. 608, 614 (S.D.N.Y. 1990), citing Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 730-31, 95 S. Ct. 1917, 1922-23, 44 L. Ed. 2d 539 (1975).

The Amended Complaint concedes that Abbey is not a purchaser or seller of 3FTI securities.  (Am. Comp. ¶ 33)  Plaintiff claims that he was fraudulently induced into investing in the Limited Partnership and that he is stuck with his investment because "[t]he terms of the Partnership Agreement are unjust and were structured to deprive Plaintiff of any control over his investment."  (Am. Comp. ¶ 36)  Plaintiff further claims that "[t]he Partnership Agreement prohibits Plaintiff from withdrawing his investment in 3F Partners until the year 2055 . . . ."  (Am. Comp. ¶ 36)  Given these allegations, Plaintiff lacks standing to assert securities law violations against 3FTI.  See Landy, 734 F. Supp. at 615 ("[P]laintiffs in the instant action do not have standing to assert securities law violations against Petro-Tech IV as they are neither purchasers or sellers of units of that partnership.").

The Courts in this Circuit routinely deny standing to limited partners seeking to assert securities fraud claims arising out of investments actually made by the general partners on behalf of the limited partnership.  See Ackerman v. Nat'l Prop. Analysts, Inc., 887 F. Supp. 494, 502 (S.D.N.Y. 1992); Bolger v. Laventhol, Krekstein, Horwath & Horwath, 381 F. Supp. 260, 267 (S.D.N.Y. 1974); see also Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp., 369 F.3d 27, 34 (2d Cir. 2004) ("stockholders do not have standing to sue under Section 10(b) and Rule 10b-5 when the company whose stock they purchased is negatively impacted by the material misstatement of another company, whose stock they do not purchase."); Weiss v. Ganz, 26 F. Supp. 2d 655, 657 (S.D.N.Y. 1998) (denying standing to individual for claims arising out of purchases made by his investment vehicle).

In Bolger the plaintiffs "argued that as limited partners of a partnership formed for the sole purpose of investing in securities, they have the right to maintain a suit under Section 10(b) because of the purchases and sales of the securities made by the general partners for the

partnership's portfolio." <u>Bolger</u>, 381 F. Supp. at 267.  The Court held that the Second Circuit's well settled rule that affords standing only to actual purchasers or sellers of a security, known as the Birnbaum Rule, "would be completely eviscerated if a person who himself neither bought nor sold securities could be characterized as a purchaser or seller merely because of his relationship to the actual purchaser or seller." <u>Id.</u>

The Amended Complaint concedes that Abbey is not a purchaser of 3FTI securities. (Am. Comp. ¶ 37)  The Series E Financing completed by 3FTI lists 3F Partners Limited Partnership II, not Abbey, as the purchaser of 3FTI shares.  (Am. Comp. ¶ 37)  Accordingly, Abbey lacks standing to assert securities fraud claims against 3FTI.

### 2.    Plaintiff's Alleged Reliance Is Unreasonable As A Matter Of Law

The Courts in this Circuit follow the "general rule" that "reasonable reliance must be proved as an element of a securities fraud claim." <u>Harsco Corp. v. Segui</u>, 91 F.3d 337, 342 (2d Cir. 1996).  Plaintiff has failed to plead that he reasonably relied upon Skokos' oral representations.  Amazingly, Plaintiff fails to allege any due diligence on his part prior to investing $4 million in the Limited Partnership.  The Amended Complaint quotes from an e-mail sent by Plaintiff to Skokos which demonstrates Plaintiff's complete failure to investigate Skokos' representations: "I have the utmost faith in you and that was the sole basis for giving you the money."  (Am. Comp. ¶ 23)  Plaintiff alleges that on the day that he invested in the Limited Partnership, Plaintiff received a schedule of 2004 cash flow and a balance sheet as of year end 2004 for 3FTI.  (Am. Comp. ¶¶ 20-21)  This schedule allegedly disclosed $8 million of long-term debt.  (Am. Comp. ¶ 20)  Plaintiff, a securities law practicioner, did not request a copy of any financial statements, did not request a copy of the alleged firm offer letters to purchase 3FTI, did not ask to see drafts of the financing documents pursuant to which 3F Partners Limited

Partnership II invested in 3FTI, did not request to speak with any officers of 3FTI, did not review

the public disclosures of the potential suitor Medtronics, Inc. and elected to rely solely upon Mr.

Skokos' oral representations.  Under these circumstances, Plaintiff's reliance is unreasonable as a

matter of law.  See Travellers Indem. Co. of Illinois v. CDL Hotels USA, Inc., 322 F. Supp. 2d

482, 503-04 (S.D.N.Y. 2004) ("In assessing the reasonableness of a plaintiff's alleged reliance,

[the court must] consider the entire context of the transaction, including factors such as its

complexity and magnitude, the sophistication of the parties, and the content of any agreements

between them." (citation omitted))  Here, Plaintiff's failure to investigate and confirm the status

of the alleged vague representations of "firm offers" and "imminent sale" is fatal to his securities

fraud claim against 3FTI.  Mr. Abbey did not confirm an exact price, a closing date or any of the

terms and conditions of these alleged "firm offers."  The United States Court of Appeals for the

Second Circuit has held:

> where . . . a party has been put on notice of the existence of
> material facts which have not been documented and he
> nevertheless proceeds with a transaction without securing the
> available documentation or inserting appropriate language in the
> agreement for his protection, he may truly be said to have willingly
> assumed the business risk that the facts may not be as represented.

Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 195 (2d Cir. 2003),

quoting Rodas v. Manitaras, 159 A.D.2d 341, 343, 552 N.Y.S.2d 618, 620 (1st Dep't 1990).

Plaintiff could have insisted upon terms in the Limited Partnership Agreement to protect against

the possibility that the contemplated transaction would not close.  Plaintiff failed to do so and,

accordingly, assumed the business risk.

In addition, the Limited Partnership Agreement contains a merger clause that provides:

> "This Agreement constitutes the full and complete understanding
> and entire agreement of the parties and supersedes any and all
> other agreements, oral or written, with respect to the subject matter
> contained herein."

Morrison Aff. Ex. "C" at ¶ 17.5. As a matter of law, the merger clause precludes Plaintiff's

reasonable reliance on any prior oral agreements between Abbey and Skokos with respect to the

duration of Abbey's investment or the return of cash proceeds soon after the sale of 3FTI,

thereby dooming his securities fraud, fraud and negligent misrepresentation claims.  See Harsco,

91 F.3d at 342; Dyncorp v. GTE Corp., 215 F. Supp. 2d 308, 318-19 (S.D.N.Y. 2002) ("A party

to a contract cannot allege that it reasonably relied on a parol representation when, in the same

contract, it 'specifically disclaims reliance upon [that] particular representation.'") (citation

omitted).

The Limited Partnership Agreement contains explicit provisions that directly contradict

Abbey's alleged expectation of a short term, risk free investment.  (Morrison Aff. Ex. "C" at

¶¶ 5.1; 16.1(c)(iii); 16.1(d); 17.5)  Because Skokos' alleged oral representations fly in the face of

the provisions of the Limited Partnership Agreement, Abbey's alleged reliance on Skokos'

statements was unreasonable as a matter of law.  See, e.g., Brown v. E.F. Hutton Group, 735 F.

Supp. 1196, 1202 (S.D.N.Y. 1990) (reliance on oral statements that investment was low risk

which contradicted statements in written materials was "clearly" unreasonable).

### 3.  Plaintiff's Allegations Concerning Skokos' Beliefs Or Expectations Are Not Actionable Under Section 10(b) Or Rule 10b-5

The Amended Complaint fails to allege any misrepresentations or omissions of present

facts in connection with its claims against 3FTI.  The Amended Complaint merely alleges that

Skokos represented to Plaintiff that because of the alleged "firm offers," Skokos was optimistic

that a sale of the company would occur imminently.  Specifically, the Amended Complaint

alleges Skokos told Plaintiff that "there were 'firm offers' to purchase the Company, and that

Plaintiff's investment would be short-term" (Am. Comp. ¶ 10); that "a substantial profit on the

investment would soon be realized" (Am. Comp. ¶ 11); and that "the sale and return of capital and a profit would be achieved in a relatively short time, after which the loan could be repaid." (Am. Comp. ¶ 13)  In fact, Mr. Abbey alleges that he sent an e-mail to Skokos months after his purchase of a limited partnership interest which stated "Where do we stand regarding selling the Company? . . . As you know, I borrowed the $[4] million from the bank to pay for 3F.  It was based upon your representations that a sale transaction was imminent . . . ."  (Am. Comp. ¶ 23)

      Plaintiff's frustration with 3FTI's failure to close an anticipated future cash sale of the company does not support a claim for securities fraud.  Courts routinely find that statements concerning the status of a contemplated corporate transaction "are merely expressions of optimism concerning an uncertain future event," and therefore are not actionable.  See Faulkner v. Verizon Commc'ns, Inc., 156 F. Supp. 2d 384, 397-98 (S.D.N.Y. 2001) ("Faulkner I"); Faulkner v. Verizon Commc'ns, Inc., 189 F. Supp. 2d 161, 173 (S.D.N.Y. 2002) ("Faulkner II"). In Elliott Assocs. L.P. v. Covance, Inc., No. 00 Civ. 4115 (SAS), 2000 WL 1752848 (S.D.N.Y. Nov. 28, 2000), the court dismissed securities fraud claims brought by shareholders of two companies that had announced but never consummated a merger based upon allegations that after the defendant companies announced their contemplated merger, representatives of each company made statements to plaintiffs that the merger was "on track."  Id. at *2.  The court found that "the statements made by the various Covance and Parexel employees that the merger was 'on track' constitute the same type of optimism found to be inactionable . . . .  As these statements were neither accompanied by specific quantification or otherwise implied certainty, they are not actionable unless plaintiffs can allege facts indicating that they were false when made."  Id. at *10.

Clearly, Skokos' alleged misrepresentations concerning the "imminent" potential sale of 3FTI were expressions of optimism or projection that fail to qualify as a material misrepresentation under the federal securities laws.  In <u>Marx & Co., Inc. v. Diners' Club, Inc.</u>, 550 F.2d 505, 514 (2d Cir. 1977), the Second Circuit affirmed the District Court's dismissal of a 10b-5 claim that was predicated upon defendant's representations to plaintiff investor that defendant's company would be involved in an "imminent" takeover that would occur "very shortly."  The Second Circuit stated:

> We need not hold that plaintiffs did not rely on these statements, although it is certainly difficult to believe that plaintiffs, sophisticated investment bankers and businessmen, would have governed their conduct in reliance on such imprecise representations.  Similarly, we need not hold that these alleged representations were immaterial as a matter of law, although a reasonable man would certainly be hesitant to attach great importance to such indefinite predications of the future.  For the defendants never represented as a fact that a takeover would occur within a certain period.

<u>Id</u>. (citations omitted)

The Amended Complaint relies upon a public filing made by ATS Medical -- the company that ultimately acquired 3FTI in September 2006 -- as the "gotcha" moment when 3FTI's fraud with respect to Skokos' representations about "firm offers" was revealed.  (Am. Comp. ¶ 29)  Yet the proxy quoted in the Amended Complaint confirms that, at the time of Skokos' representations, a few companies had "expressed interest and conducted due diligence" without entering into non-disclosure agreements with 3FTI.  (Am. Comp. ¶ 29)  This is consistent with the memo that Skokos sent to the limited partners on or about June 12, 2005:

> During the last six months, 3F received two letters of intent from large medical technology companies for acquisition of 3F.  One offer was for cash and the other was for stock . . . .  After many months of due diligence with both companies no deal was proposed that was acceptable to 3F.

(Am. Comp. ¶ 22)  Plaintiff interprets this disclosure to mean that, prior to Abbey's investment, Skokos should have told Abbey that there was "not a single seriously interested party in February 2005" (Am. Comp. ¶ 29); "that the consummation of sale of the Company was, in fact, unlikely," (Am. Comp. ¶ 31); and that 3FTI "was desperate to obtain additional capital to try to salvage a sale to some potential acquirer [sic]."  (Am. Comp. ¶ 31)  However, courts follow the "general rule" that "it is not deceptive to fail to 'characterize' . . . facts with 'pejorative nouns and adjectives,' or to fail to verbalize all adverse inferences expressly." Klamberg v. Roth, 473 F. Supp. 544, 551 (S.D.N.Y. 1979), quoting Goldberg v. Meridor, 567 F.2d 209, 218 n. 8 (2d Cir. 1977) ("We do not mean to suggest that s 10(b) or Rule 10b-5 requires insiders to characterize . . . transactions with pejorative nouns or adjectives.").  Skokos did not have a duty to characterize the negotiations with potential suitors or the financial condition of the company in the manner that Plaintiff insists upon.  See In re Ultrafem Inc. Secs. Litig., 91 F. Supp. 2d 678, 702 (S.D.N.Y. 2000) ("Defendants were not obligated to characterize their need for additional financing as 'desperate,' 'dire' or otherwise.")[4]

### 4.    Plaintiff Has Failed To Allege Facts Sufficient To Support A Strong Inference Of 3FTI's Scienter

The Amended Complaint alleges no facts to support the required strong inference of 3FTI's scienter.  "The requisite state of mind, or scienter, in an action under Section 10(b) and Rule 10b-5, that the plaintiff must allege is 'an intent to deceive, manipulate or defraud.'" Kalnit v. Eichler, 264 F.3d 131, 138 (2d Cir. 2001), quoting Ganino v. Citizens Utils. Co., 228 F.3d

---

[4]    Mr. Abbey was counsel of record for plaintiffs in the Ultrafem case.  At least one additional reported decision also rejects Mr. Abbey's attempt to assert securities fraud on the basis that disclosed facts were not characterized in the pejorative terms insisted upon by Mr. Abbey.  See Sheppard v. TCW/DW Term Trust 2000, 938 F. Supp. 171, 175 (S.D.N.Y. 1996).

154, 168 (2d Cir. 2000).  In order to satisfy this strict pleading requirement, plaintiffs must plead specific facts that create a strong inference of either knowing misrepresentation or conscious recklessness.  See, e.g., In re Health Mgmt. Syss., Inc. Sec. Litig., No. 97 CIV. 1986 (HB) 1998 WL 283286, at *6 (S.D.N.Y. Jun. 1, 1998).  Under the PSLRA, "a showing of motive and opportunity, without more, no longer suffices to raise a strong inference of scienter . . . ." Id. Under recent Supreme Court authority, a court must take into account plausible opposing inferences to determine whether the pleaded facts give rise to a strong inference of scienter. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179, 193 (2007).  For an inference of scienter to be strong, a "reasonable person [must] deem [it] cogent and at least as compelling as any opposing inference one could draw from the facts alleged." ATSI Commc'ns, Inc., 493 F.3d at 99 (emphasis in original; citations omitted).

The Amended Complaint fails to allege that any other director of 3FTI or any officer had any knowledge of the alleged representations made to Abbey.  Moreover, the Amended Complaint fails to allege scienter with respect to Mr. Skokos that can be imputed to 3FTI.  To the contrary, the Amended Complaint's allegations contradict any inference of 3FTI's scienter.  For instance, the Amended Complaint alleges that Skokos controlled the Limited Partnership and made representations to Skokos on behalf of the Limited Paratanership.  (Am. Comp. ¶ 16-18) The Amended Complaint also alleges that Mr. Skokos expected to make 20% of Abbey's profit from Skokos' tip (Am. Comp. ¶ 14) and, therefore, stood to gain only if Abbey made a profit. Moreover, the Supreme Court of the United States has held that scienter will not be presumed against a tipper when a tippee alleges that the tip has failed to pan out.  See Bateman Eichler,

Hill Richards, Inc. v. Berner, 472 U.S. 299, 318, 105 S. Ct. 2622, 2633 (1985).[5]  Also, the

Amended Complaint alleges that 3FTI was not in desperate need of cash and, to the contrary,

received a $25 million cash infusion from Edward Life Sciences in connection with an exclusive

license of one of 3FTI's products shortly after the Series E financing.  (Am. Comp. ¶¶ 22-23)

Accordingly, Plaintiff has failed to plead facts to support a strong inference that Skokos or 3FTI

had an intent to deceive.  Plaintiff's conclusory allegations that 3FTI acted "knowingly or

recklessly" (Am. Comp. ¶ 48) are insufficient as a matter of law.  See, e.g., Kalnit, 264 F.3d at

142.[6]

---

[5]     The Bateman Eichler decision also permits this Court to dismiss Abbey's claims on the
basis of in pari delicto.  Although the Bateman Eichler court refused to apply in pari
delicto to dismiss securities fraud claims brought by a tippee against a tipper, it narrowed
its holding to the facts presented there.  Specifically, the Supreme Court found that the
tippers were more at fault than the tippees because the tippers were securities
professionals and the corporate president who used a false tip about the company to
manipulate the price of its stock so they could personally gain by commissions and secret
profits.  Id. at 314-17.  Bateman Eichler and Pinter v. Dahl, 486 U.S. 622, 633, 635-38,
108 S. Ct. 2063 (1988) set forth a two prong analysis when in pari delicto can be used to
dismiss a securities fraud claim:  (1) when, as a direct result of his own actions, the
plaintiff bears at least substantially equal responsibility for the violations he seeks to
redress; and (2) when barring the claim would not significantly interfere with
enforcement of securities laws or protection of the investment public.  Bateman Eichler,
472 U.S. at 310-11.  Here, Mr. Abbey voluntarily and eagerly participated in the
transaction and even agreed to give Skokos 20% of his profit from the tip.  Moreover, it
would not frustrate the policy of protecting investors to bar Abbey's claims against 3FTI,
a defendant that did not sell securities to Abbey and is sued only because of the status of
Skokos as a director.  See Ross v. Bolton, 904 F.2d 819, 825-26 (2d Cir. 1990) (applying
in pari delicto and holding that plaintiff's "attempt to profit from a 'sure thing'" by
entering into a pre-arranged trade with guaranteed profit barred his claim asserted against
the clearing broker after his trade failed); see also Nisselson v. Lernout, 469 F.3d 143,
157 (1st Cir. 2006) ("The securities laws were enacted to protect investors from deceptive
practices, not to give the intended beneficiaries of deceptive practices a back-door means
of ensuring a profit.") (citation omitted).

[6]     The Amended Complaint's failure to plead scienter with particularity requires dismissal
also under Fed. R. Civ. P. 9(b) and the PLSRA.  See Tellabs, 127 S. Ct. at 2504, 2507-08;
Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129 (2d Cir. 1994).

5.   **Plaintiff Has Failed To Allege Causation Or Damages**

It is well settled that a securities fraud plaintiff must plead and prove transaction and loss causation. See Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 172 (2d Cir. 2005). Loss causation is defined as "'the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff.'" Id. (citation omitted). The PSLRA has codified this requirement:

> In any private action arising under this chapter, the plaintiff shall
> have the burden of proving that the act or omission of the
> defendant alleged to violate this chapter caused the loss for which
> the plaintiff seeks to recover damages.

15 U.S.C. § 78u-4(b)(4). Loss causation is described in terms of proximate cause: "'[T]he damages suffered by plaintiff must be a foreseeable consequence of any misrepresentation or material omission' . . . ." Lentell, 396 F.3d at 172 (citation omitted).

The United States Supreme Court has reaffirmed the loss causation requirement:

> [A]llowing a plaintiff to forgo giving any indication of the
> economic loss and proximate cause that the plaintiff has in mind
> would bring about harm of the very sort the [federal securities
> statutes] seek to avoid. It would permit a plaintiff 'with a largely
> groundless claim to simply take up the time of a number of other
> people, with the right to do so representing an *in terrorem*
> increment of the settlement value, rather than a reasonably founded
> hope that the [discovery] process will reveal relevant evidence.'
> Such a rule would tend to transform a private securities action into
> a partial downside insurance policy.

Dura Pharm. Inc. v. Broudo, 544 U.S. 336, 347-48, 125 S. Ct. 1627, 1634 (2005) (citations omitted).

This action represents precisely the situation foreseen in Dura. Plaintiff has asserted claims against 3FTI solely for their in terrorem effect. The Amended Complaint is bereft of any allegation of actual economic loss suffered by Plaintiff and clearly fails to plead damages arising

as a foreseeable consequence of any alleged misrepresentation or omission on the part of 3FTI.[7]
The gravamen of Plaintiff's Amended Complaint is that he failed to make a quick profit on his
investment notwithstanding that, by its very terms, such investment was mandated to be long
term.  Clearly, this is insufficient to establish loss causation against 3FTI.  Merely alleging that
plaintiff was fraudulently induced into making an investment is not enough.  See Citibank, N.A.
v. K-H Corp., 968 F.2d 1489, 1495 (2d Cir. 1992) (upholding dismissal of complaint and finding
failure to plead loss causation where plaintiff "'alleged the cause of [its] entering into the
transaction in which [it] lost money but not the cause of the transaction's turning out to be a
losing one.'") (citation omitted); see also In re QLT Inc. Sec. Litig., 312 F. Supp. 2d 526, 536-37
(S.D.N.Y. 2004).

## POINT II

## THE AMENDED COMPLAINT FAILS TO STATE
## A COMMON LAW CLAIM

**A.   Plaintiff's Common Law Claims Suffer
       From The Same Fatal Defects As His
       Securities Fraud Claims**

Under New York law, to prevail on a fraud claim, a plaintiff must allege and prove:  (1) a
material false representation or omission of an existing fact, (2) made with knowledge of its
falsity, (3) with an intent to defraud, and (4) reasonable reliance, (5) that damages plaintiff.
Schlaifer Nance & Co., Inc. v. Estate of Warhol, 927 F. Supp. 650, 660 (S.D.N.Y. 1996), aff'd,
119 F.3d 91 (2d Cir. 1997).  Reasonable reliance is an essential element for both fraud and
negligent misrepresentation claims.  See Harsco, 91 F.3d at 342; see also UST Private Equity

---

[7]     Plaintiff's inability to allege a compensable loss is another reason to dismiss his securities
        fraud claim.  See Levine v. Seilon, Inc., 439 F.2d 328, 335 (2d Cir. 1971) (holding
        plaintiffs 10b-5 claim "was properly dismissed because, on his own showing, [plaintiff]
        suffered no compensable loss.")

Investors Fund, Inc. v. Salomon Smith Barney, 288 A.D.2d 87, 88, 733 N.Y.S.2d 385, 386 (1st

Dep't 2001) (sophisticated plaintiff cannot establish justifiable reliance where it fails to review

information or documents available to it).  As the elements of common law fraud under New

York law "'are substantially identical to those governing 10(b) [of the Exchange Act], the

identical analysis applies.'"  Rich v. Maidstone Fin., Inc., 98 Civ. 2569 (DAB), 2001 U.S. Dist.

LEXIS 3167, at *34 (S.D.N.Y. Mar. 23, 2001), citing Morse v. Weingarten, 777 F. Supp. 312,

319 (S.D.N.Y. 1991).  Accordingly, Plaintiff's common law claims are equally deficient.

**B.     The Amended Complaint Fails To State A
        Negligent Misrepresentation Claim[8]**

Count III of the Amended Complaint, asserting a claim for negligent misrepresentation

against 3FTI, must be dismissed because: (a) New York's Martin Act preempts this claim; and

(b) Plaintiff has failed to allege the requisite elements for this claim.

New York's "Blue Sky law," the Martin Act, prohibits various fraudulent and deceitful

practices in the distribution, exchange, sale, and purchase of securities.  See N.Y. Gen. Bus. Law

§ 352(1) (McKinney 2007).  The Act "provides the New York Attorney General with the sole

discretion to investigate securities violations within or from the state of New York."  Id.; In re

Bayou Hedge Fund Litig., 534 F. Supp. 2d 405, 421 (S.D.N.Y. 2007).

The New York Court of Appeals and federal courts have interpreted these provisions to

preempt those common law claims, such as negligent misrepresentation, relating to the purchase

and sale of securities that do not include scienter as an essential element.  See, e.g., CPC Int'l

Inc. v. McKesson Corp., 70 N.Y.2d, 268, 276-77, 514 N.E. 2d 116, 519 N.Y.S.2d 804, 807 (N.Y.

---

[8]     Fed. R. Civ. P. 9(b) applies to dismiss Plaintiff's common law fraud and negligent
       misrepresentation claims for failure to particularize.  See Hampshire Equity Partners II,
       L.P. v. Teradyne, Inc., 04 Civ. 3318 (LAP), 2005 U.S. Dist. LEXIS 5261, at *5-6
       (S.D.N.Y. March 30, 2005).

1987); <u>Kassover v. UBS AG</u>, No. 08 Civ. 02753 (LMM), 2008 WL 5331812, at *7 (S.D.N.Y.

Dec. 19, 2008); <u>Sedona Corp. v. Ladenburg Thalmann & Co., Inc.</u>, No. 03 Civ.3120 (LTS)

(THK), 2005 WL 1902780, at *22 (S.D.N.Y. Aug. 9, 2005) (dismissing, among others, negligent

misrepresentation claims as preempted by the Martin Act).

      Moreover, Plaintiff cannot allege the necessary elements of a negligent misrepresentation

claim.  To state a claim for negligent misrepresentation, a plaintiff must allege facts to establish

that:  (1) the parties stood in some special relationship imposing a duty of care on the defendant

to render accurate information; (2) the defendant negligently provided incorrect information; and

(3) the plaintiff reasonably relied upon the information given.  <u>Pappas v. Harrow Stores, Inc.</u>,

140 A.D.2d 501, 504, 528 N.Y.S.2d 404, 407 (2d Dep't 1988).

      The Amended Complaint fails to allege any special relationship existing between 3FTI

and Plaintiff that is required to impose upon 3FTI an obligation to disclose.  <u>See</u> <u>United Safety of</u>

<u>Am., Inc. v. Consol. Edison Co. of New York, Inc.</u>, 213 A.D.2d 283, 285-86 (1st Dep't 1995).

Finally, as set forth above, Plaintiff cannot allege reasonable reliance.

<h3 style="text-align:center">POINT III</h3>

<h3 style="text-align:center">THE AMENDED COMPLAINT SHOULD BE DISMISSED<br><u>WITH PREJUDICE AGAINST 3FTI</u></h3>

      The law is well settled that leave to replead, normally freely given, may be denied if

repleading would be futile.  <u>See</u> <u>Hampshire Equity Partners II, L.P.</u>, 2005 U.S. Dist. LEXIS

5261, at *16-17. Mr. Abbey cannot overcome (1) the fact that he did not invest in 3FTI; (2) that

Mr. Skokos' expressions of optimism are not actionable; (3) that Mr. Abbey acknowledged and

agreed that his investment would be long term; (4) that Mr. Abbey undertook no investigation

prior to his investment; (5) that Mr. Abbey has not suffered an economic loss; and (6) that there

is no causation between Mr. Abbey's alleged loss and any conduct by 3FTI.  As set forth in <u>In re</u>

QLT Inc. Sec. Litig., 312 F. Supp. 2d at 537, the Amended Complaint should be dismissed with prejudice because "even a liberal reading of the [c]omplaint does not indicate that a valid claim for securities fraud may be alleged in conformity with the pleading requirements of Rule 9(b) and the PSLRA." Id. Because Mr. Abbey has failed to solve the defects in his original complaint, dismissal with prejudice is appropriate. See McLoughlin v. Altman, No. 92 Civ. 8106 (KMW), 1993 WL 362407, at *7 (S.D.N.Y. Sept. 13, 1993).

## CONCLUSION

For all the foregoing reasons, defendant 3FTI respectfully requests the Court to grant its

motion for an order, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) and 15 U.S.C. § 78u-4,

dismissing the Amended Complaint, with prejudice, and to award 3FTI such further relief as the

Court deems proper.

Dated:   New York, New York
         March 31, 2009

By:_____
     Andrew L. Morrison (AM- 1071)
     599 Lexington Avenue
     New York, New York  10022
     (212) 536-3900
     Attorneys for Defendant 3F Therapeutics, Inc.