UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ARTHUR N. ABBEY,                            |
                                            |
                         Plaintiff,         |          06 CV 409 (KMW)
                                            |
         -against-                          |          OPINION AND ORDER
                                            |          ON MOTION TO DISMISS
3F THERAPEUTICS, INC.,                      |
                                            |
                         Defendant.         |
-------------------------------------------------------X

KIMBA M. WOOD, U.S.D.J.:

**I.  Introduction**

        Plaintiff Arthur N. Abbey ("Plaintiff") brings claims against Defendant 3F Therapeutics,

Inc. ("3FTI") based on federal securities fraud law and New York State law of common law

fraud and negligent misrepresentation.  Defendant moves to dismiss the Amended Complaint,

arguing that: (1) Plaintiff lacks standing to assert his federal securities fraud claim; (2) Plaintiff

fails to sufficiently allege the elements of any of his claims; and (3) Plaintiff's negligent

misrepresentation claim is preempted by New York State's Martin Act.  Defendant requests that

the Amended Complaint be dismissed with prejudice.

        For the reasons discussed below, the motion to dismiss is DENIED insofar as the Court

finds that Plaintiff has standing to bring his federal securities fraud claim against Defendant.  The

motion is GRANTED with respect to the negligent misrepresentation claim, which is preempted

by New York State's Martin Act.  With respect to Defendant's arguments on the specific

elements of Plaintiff's federal and state law fraud claims, the Court finds that consideration of

materials outside the pleadings is required.  Conversion of the instant motion to dismiss to one

for summary judgment is therefore warranted.  See Kopec v. Coughlin, 922 F.2d 152, 154 (2d

Cir. 1991); Fed. R. Civ. P. 12(d).  Notice of the conversion and a reasonable opportunity to

present additional materials pertinent to the motion must be provided to the parties.  Kopec, 922 F.2d at 154.  Accordingly, limited discovery and supplemental briefing on the motion for summary judgment shall be permitted in light of this Opinion and Order.

**II.  Procedural Background**

In January 2006, Plaintiff filed suit against Defendants Theodore C. Skokos ("Skokos"), 3F Partners Limited Partnership II ("3F Partners"), 3F Management II, LLC ("3F Management"), and 3FTI, alleging that: (1) Defendants violated Section 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5; (2) Defendants committed common law fraud under New York State law; and (3) Defendants made negligent misrepresentations that induced Plaintiff to purchase a limited partnership interest in 3FTI in violation of New York State law.

Defendants moved to dismiss or transfer the case.  On August 6, 2007, the Court dismissed all claims against Skokos, 3F Partners and 3F Management on the ground that the forum selection clause in the parties' 3F Limited Partnership Agreement required that those claims be litigated in Texas.  The federal securities fraud claim against 3FTI was dismissed on the ground that Plaintiff had failed to plead that 3FTI made any misstatements or omissions of material fact.  The Court held that any alleged misrepresentations were made by Skokos and that Plaintiff did not sufficiently allege that Skokos was acting as an agent of 3FTI when he made the statements at issue.  With the federal claim dismissed, the Court declined to exercise supplemental jurisdiction over the state law fraud and negligent misrepresentation claims.

Plaintiff appealed the Court's dismissal of all claims.  On December 18, 2008, the Court of Appeals for the Second Circuit issued a Summary Order affirming in part and vacating in part the Court's judgment.  The Second Circuit affirmed the Court's finding that (1) the forum

selection clause contained in the 3F Limited Partnership Agreement precluded Plaintiff from bringing his claims against Skokos, 3F Partners, and 3F Management in the Southern District of New York; and (2) Plaintiff failed to plead that Skokos was an agent of 3FTI at the time of the alleged fraud.  The Second Circuit held that Plaintiff should be granted the opportunity to amend the Complaint in order to establish an agency relationship between Skokos and 3FTI at the time of the relevant conduct.  The case was remanded, and the district court was directed to grant leave to amend.  See Summary Order, Jan. 8, 2009, Docket Entry ("DE") 35.

On January 13, 2009, in accordance with the decision of the Court of Appeals for the Second Circuit, the Court granted Plaintiff leave to amend.  On February 13, 2009, Plaintiff filed his Amended Complaint, in which 3FTI is the only named defendant.  On April 1, 2009, Defendant 3FTI filed the instant motion to dismiss the Amended Complaint.

**III. Plaintiff's Factual Allegations**

Plaintiff sets forth the following allegations in his Amended Complaint.  In February 2005, Skokos contacted Plaintiff, a business acquaintance, and told him about an investment opportunity with 3FTI, a company that develops cardiac and circulatory medical products.  Am. Compl. ¶ 7.  Skokos represented to Plaintiff that he was in charge of promoting the sale of 3FTI. He told Plaintiff that two companies were interested in purchasing 3FTI and had made "firm offers to purchase all of [3FTI] or its equity securities for '9 figures,' or not less than $6 per share for some 15 million shares outstanding."  Id. ¶ 7.  He stated that the sale could be facilitated if 3FTI could strengthen its balance sheet, which at the time included $8 million of debt.  Id. ¶¶ 8-9.  He assured Plaintiff that 3FTI had sufficient capital to maintain its business operations for the foreseeable future and required further financial backing only for the purpose of negotiating with prospective acquirers "from a position of strength."  Id. ¶ 8.

Skokos encouraged Plaintiff to purchase 1.8 million shares of 3FTI's equity stock at $2.25 per share, for a total of approximately $4 million.  Id. ¶¶ 8, 11.  He represented that Plaintiff's investment would be short-term, carry no financial risk, and result in a substantial profit upon sale of the company.  Id. ¶¶ 10-11.  Plaintiff allegedly agreed to Skokos' proposal based on these representations and on the understanding that his investment was necessary only to create a stronger financial image for the company, not to provide 3FTI with "working capital."  Id. ¶¶ 12, 13, 15.  Skokos asked that, as part of the deal, he receive twenty percent of whatever profit Plaintiff made on his investment.  Id. ¶ 14.  Plaintiff approved this profit-sharing arrangement.  Id. ¶¶ 14, 17.

Defendant, through Skokos, proposed that Plaintiff's $4 million investment in 3FTI be made indirectly through a limited partnership rather than by means of a direct purchase of 3FTI securities.  Id. ¶ 16.  Plaintiff consented to this investment structure based on Skokos' assurances that such an arrangement would not "adversely affect" Plaintiff's ability to make a substantial profit in the short term, with no financial risk.  Id. ¶¶ 17-18.  On March 23, 2005, Skokos sent to Plaintiff a 3F Partners Limited Partnership II Agreement, which was signed by Skokos as the general partner.  Id. ¶ 19.  On March 29, 2005, Skokos provided Plaintiff 3FTI financial statements and represented that they evidenced the company's strong financial position.  Id. ¶ 20.  Plaintiff then obtained a $4 million loan and wired that money to the account of the 3F Limited Partnership.  Id. ¶¶ 13, 21.  His investment constituted a purchase of a 66% interest in the partnership.  See Morrison Aff. Ex. C at 76.  The entire $6 million invested through the partnership entity was transferred to 3FTI on April 18, 2005, approximately twenty days after Plaintiff wired the money into the 3F Limited Partnership account.  Am. Compl. ¶ 35.

On June 12, 2005, Skokos transmitted a memorandum to Plaintiff, which stated that: (1) 3FTI had received two letters of intent from potential acquirers but no deal had been proposed that was acceptable to 3FTI; (2) 3FTI had entered into a contract-restructuring deal with another company, through which 3FTI received $23 million in cash along with the promise of $2 million upon execution of a medical supply agreement; and (3) Skokos had recently been named Chairman of the 3FTI Board of Directors.  Id. ¶ 22.

Plaintiff inquired on multiple occasions about 3FTI's plans for distribution of the $25 million that the company was to receive pursuant to the contract-restructuring deal.  Id. ¶ 23.  On September 22, 2005, Plaintiff sent an e-mail inquiry to Skokos that stated the following:

> Where do we stand regarding selling the Company? . . .  As you know, I borrowed the $[4] million from the bank to pay for 3F.  It was based upon your representations that a sale transaction was imminent and that it would be very helpful to have a balance sheet showing sufficient cash so that a buyer would not try to take advantage of the situation.  It is a number of months since I sent you the money and I need to know where things stand.  I have the utmost faith in you and that was the sole basis for giving you the money.

Id. ¶ 23.  Skokos responded with assurances that a sale was forthcoming and Plaintiff would soon enjoy a profit.  Id. ¶¶ 24-25.

In December 2005, Plaintiff again inquired about the sale of 3FTI and learned that the company was experiencing substantial financial difficulties and that a sale was not imminent.  Id. ¶¶ 26-28.  On April 18, 2006, a disclosure was made to the Securities and Exchange Commission by ATS Medical, the company that would later acquire 3FTI, which stated:

> From January 2005 through May 2005, 3F Therapeutics management contacted a number of companies regarding a potential strategic partnership or acquisition.  Although a few companies expressed interest and conducted due diligence, 3F Therapeutics did not enter into any nondisclosure agreements or

other similar agreements with any of these companies regarding potential acquisition transactions.

Id. ¶ 29.

The 3FTI company was sold to ATS Medical in or around August 2006; Plaintiff's investments were converted to illiquid restricted stocks. Id. ¶ 42.

Plaintiff alleges four material misrepresentations made by Skokos, who, Plaintiff contends, acted as an agent and director of 3FTI: (1) 3FTI had two "firm offers" from companies who were interested in acquiring 3FTI for cash in February 2005; (2) a cash sale of 3FTI for "9 figures," or no less than $6 per share, was imminent; (3) Plaintiff's investment in 3FTI would be short-term and without risk, and would result in a substantial profit; and (4) 3FTI was in good financial condition and did not need Plaintiff's cash for "working capital" but rather to negotiate the sale "from a position of strength." Id. ¶ 30.

Plaintiff claims that he relied on these representations and would not have agreed to invest in the company had he been provided with information about the true circumstances of the company and negotiations for its sale. Id. ¶¶ 31-33. He asserts that the 3F Limited Partnership, which served as the vehicle for his investment, was a "single-purpose entity that was designed solely to further 3FTI's scheme to take Plaintiff's money" and to "prevent Plaintiff from liquidating his investment when the truth [about the company's financial situation] was revealed." Id. ¶¶ 34-35. Plaintiff seeks damages based on Defendant's wrongful conduct that caused his $4 million investment to be "substantially depleted," alleging that his investment was in part "burned through" by the company and that the value of the ATS Medical shares provided to him was diminished "due to their illiquidity." Id. ¶ 42.

**IV. Legal Standard for Motion to Dismiss**

6

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff's factual allegations must be accepted as true, and all reasonable inferences are drawn in plaintiff's favor.  See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005).  "Facial plausibility" exists where the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S.Ct. at 1949.  Although a complaint need not set forth detailed factual allegations, it must provide "more than labels and conclusions . . . .  [A] formulaic recitation of the elements of a cause of action" does not suffice.  Twombly, 550 U.S. at 555 (internal citations and quotation marks omitted).  Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

A district court's analysis on a motion to dismiss is confined to "the allegations contained within the four corners of the complaint," Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), although it may examine "any written instrument attached to [the complaint] or any statements or documents incorporated in it by reference."  Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002).

If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  "Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a . . . motion [to dismiss], and thus

complete discretion in determining whether to convert the motion to one for summary

judgment." Carione v. United States, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) (internal

quotation marks and citations omitted); see also Cleveland, 448 F.3d at 521 ("A court may

indeed convert a motion for judgment on the pleadings into a motion for summary judgment").

The court must provide notice that the motion is to be converted and permit the parties to submit

additional evidence and briefing pertinent to such a motion.  See id.; Kopec, 922 F.2d at 154

(citing Fonte v. Bd. of Mgrs. of Cont. Towers Condominium, 848 F.2d 24, 25 (2d Cir. 1988)).

**V.  Analysis**

   **A.  Plaintiff's Standing to Bring Federal Securities Fraud Claim**

      1.  Legal Standard

      To establish standing to bring a securities fraud claim under Section 10(b) of the

Securities Exchange Act of 1934 ("Section 10(b)") and Securities and Exchange Commission

Rule 10b-5 ("Rule 10b-5"), a plaintiff must be deemed an actual purchaser or seller of the

securities in question.  See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 730-31

(1975) ("Blue Chip Stamps") (adopting standing rule announced in Birnbaum v. Newport Steel

Corp., 193 F.2d 461, 462-63 (2d Cir. 1952)).  In endorsing what has been termed the "Birnbaum

rule," the Supreme Court set forth specific reasons for restricting the availability of federal

securities fraud actions through this standing requirement, including: (1) Congress' intent to

reduce an unwarranted expansion of such litigation; (2) the difficulty of proving that a party who

was neither a buyer nor a seller of securities relied on an alleged misrepresentation in making a

financial decision; and (3) the difficulty of making an objective determination of damages.  See

id. at 740-43; see also Farey-Jones v. Buckingham, 132 F. Supp. 2d 92, 100 (E.D.N.Y. 2001).

The Birnbaum rule "must be interpreted so that the broad design of the Exchange Act, to prevent inequitable and unfair practices on securities exchanges and over-the-counter markets, is not frustrated by the use of novel or atypical transactions."  Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787, 798 (2d Cir. 1969).  District courts must apply Section 10(b) and Rule 10b-5 "flexibly, not technically and restrictively."  In re New York City Housing Dev. Corp. Bond Redemption Litig., No. 86-3274, 1987 WL 494921, at *8 (S.D.N.Y. May 11, 1987) (quoting Superintendent of Ins. of State of New York v. Bankers Life & Casualty Co., 404 U.S. 6, 12 (1971)); see also Heyman v. Heyman, 356 F. Supp. 958, 966 (S.D.N.Y. 1973) (noting that "courts should not be loath to look behind the legal technicalities of a transaction in order to protect those whose interests [Section 10(b)] was designed to safeguard").

Courts have found a number of factual circumstances that may warrant a finding that a plaintiff has standing to bring a federal securities fraud claim even where he or she is not an actual purchaser or seller of the securities at issue.  See, e.g., Walther v. Maricopa Int'l Inv. Corp., No. 97-4816, 1999 WL 64280, at *2 (S.D.N.Y. Feb. 9, 1999) (concluding that plaintiff who invested in securities through an intermediary entity created to facilitate the investment may be considered an "actual purchaser of the securities" and thus have standing to bring federal claim); Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) (holding that "[e]mployment contracts promising shares as compensation are generally considered securities transactions within Rule 10b-5"); Banco Nacional de Costa Rica v. Bremar Holdings Corp., 492 F. Supp. 364, 366-67 (S.D.N.Y. 1980) (finding guarantor of asset-backed notes who acted in reliance on direct misrepresentations and suffered concrete and tangible damages not barred by Birnbaum rule); In re New York City Housing Dev. Corp. Bond Redemption Litig., 1987 WL 494921, at *8 (holding that plaintiffs, as trustees, have standing to bring federal securities fraud

action on behalf of beneficiaries of the trusts); In re Washington Pub. Power Supply Syst. Sec.

Litig., 623 F. Supp. 1466 (W.D. Wash. 1985) (permitting trustee to pursue federal claims on

behalf of bondholders).

Plaintiff cites a number of decisions in which courts have held that shareholders of a

"holding company," created solely to facilitate investment in another corporate entity, have

standing to bring a federal securities fraud action under Section 10(b) and Rule 10b-5.  For

example, in Grubb v. FDIC, 868 F.2d 1151, 1161-62 (10th Cir. 1989), the plaintiff purchased

shares in a bank through a holding company that in turn made the actual purchase of securities.

The plaintiff subsequently brought a federal securities fraud action against the defendant-bank,

alleging that the bank had misrepresented its financial condition to the plaintiff.  Id. at 1153.  The

defendant argued that the plaintiff lacked standing because the holding company, not the

plaintiff, had purchased the securities at issue.  Id. at 1161.  The Court of Appeals for the Tenth

Circuit found that the Birnbaum rule did not preclude plaintiff's standing.  A number of relevant

facts favored granting the plaintiff standing: (1) the holding company was essentially a "shell

company" created immediately prior to the execution of the securities transaction for the sole

purpose of facilitating the purchase of shares in the bank; (2) the alleged misrepresentations were

made directly to plaintiff by the entity that ultimately received the invested money; (3) the

alleged misrepresentations were made before the holding company was created; (4) the plaintiff,

not the intermediate holding company, "was the actual party at risk in the transaction"; and (5)

the plaintiff's alleged damages could be easily computed.   Id. at 1161-62.

Grubb and other decisions based on comparable factual allegations support the principle

that, where a holding company is created for the sole purpose of facilitating an individual's

investment in a single company, the investor may be considered the actual purchaser for

purposes of the <u>Blue Chip Stamps</u> standing analysis.  <u>See id.</u> at 1162; <u>Walther</u>, 1999 WL 64280, at *2 (where holding company was a shell entity set up to facilitate the plaintiff's securities investment, plaintiff has standing to bring Section 10(b) action); <u>HB Holdings Corp. v. Scovill Inc.</u>, No. 88-7983, 1990 WL 37869, at *3-4 (S.D.N.Y. Mar. 26, 1990) (asserting that although plaintiff did not directly make securities purchase, it had standing to bring Section 10(b) action as a "*de facto* purchaser" given that (1) the purchase was made by a holding company "organized solely to purchase [the] stock," (2) the defendant directly solicited plaintiff to make the purchase, and (3) the plaintiff, not the holding company, negotiated the transaction and suffered direct harm); <u>Levenfeld v. Boyd</u>, No. 02-4735, 2003 WL 22532801, at *3-6 (N.D. Ill. Nov. 06, 2003) (finding that plaintiffs were *"de facto* purchasers" with standing to sue where intermediate entity was a "shell corporation created solely to facilitate" plaintiffs' purchase of securities, such entity was established after the negotiations and misrepresentations had occurred, defendants initiated the purchase and suggested creation of intermediate entity to complete the transaction, plaintiffs' money was put at risk in the securities transaction, and damages were not speculative).[1]

    2.  <u>Application of Law to Facts</u>

Plaintiff has alleged facts sufficient to support a finding that he has standing to pursue his federal securities fraud action against Defendant.  First, Plaintiff claims that the 3F Limited Partnership served as a "shell company" created for the sole purpose of investing the money of Plaintiff – and of two other investors – in 3FTI.  Plaintiff alleges that Skokos, acting as an agent of 3FTI, assured him that the limited partnership vehicle would have no effect on the "important elements" of the transaction, and that there would be no significant difference between an

---

[1] Defendant's attempt to distinguish the factual circumstances in the instant case from this line of decisions is unpersuasive.  The fact that a small number of other investors also invested in 3FTI through the 3F Limited Partnership does not affect the conclusion that Plaintiff may be considered a *de facto* actual purchaser for purposes of determining standing.

investment funneled through that entity and a direct investment in 3FTI.  Am. Compl. ¶¶ 18-19.
The parties were aware that money placed in the 3F Limited Partnership would be promptly
transferred in full to 3FTI.  Shortly after Plaintiff wired $4 million into the limited partnership
account, the entire account balance was purportedly transferred in cash to 3FTI.  Id. ¶¶ 21, 35.
The alleged facts establish that the 3F Limited Partnership was functionally a shell entity, created
for the sole purpose of effectuating Plaintiff's investment in the 3FTI company.

Second, Plaintiff alleges that Skokos recruited him as an investor and made the
misrepresentations about 3FTI's financial condition and the details of the investment directly to
him.  Third, the negotiations and misrepresentations are claimed to have occurred prior to the
creation of the 3F Limited Partnership.  Fourth, the alleged facts are sufficient to support a
finding that Plaintiff was the actual party at risk in the transaction.  Fifth, the Court finds no
substantial barrier to computing any damages to Plaintiff caused by Defendant's alleged
fraudulent misrepresentations.

This case does not present the danger that Birnbaum and Blue Chip Stamps sought to
avoid – that is, giving "bystanders" to a transaction a remedy for a fraudulent transaction to
which they were not a party.  In re New York City Housing Dev. Corp. Bond Redemption Litig.,
1987 WL 494921, at *8.[2]  The 3F Limited Partnership was created to serve as a conduit for

---

[2] Defendant's reliance on Bolger v. Laventhol, Krekstein, Horwath and Horwath, 381 F. Supp.
260 (S.D.N.Y. 1974) is misplaced.  In Bolger, plaintiffs were limited partners who invested in a
hedge fund.  The fund managers used the money to make investments in a complex portfolio of
securities transactions.  In analyzing plaintiffs' fraud claims, the district court rejected plaintiffs'
argument that they should be characterized as purchasers for purposes of standing, expressing
concern that such a finding would permit "any shareholder in a mutual fund . . . [to] bring a suit
under Section 10(b) for fraudulent mismanagement . . . on the basis of the securities transactions
undertaken in the fund's portfolio."  Id. at 267.  The instant case presents a distinct set of facts:
Plaintiff's investment was not placed in a complex portfolio through an established hedge fund,
but rather channeled into a single company through a short-lived entity.  The Bolger court itself
recognized that a "flexible approach to the problem of defining 'purchases' and 'sales' [for

investments in 3FTI, making Plaintiff and similarly situated investors the actual parties at risk. To deny Plaintiff standing based on a rigid reading of the <u>Birnbaum</u> rule would be to "exalt[] form over substance" and to foreclose a remedy for individuals whom the federal statute was designed to protect.  <u>Heyman</u>, 356 F. Supp. at 965.[3]

Accordingly, the facts as alleged do not support denial of standing under the <u>Birnbaum</u> rule.  Dismissal of Plaintiff's federal securities fraud claim is not warranted on this ground.

### B.  Required Elements of Federal Securities Fraud Claim

1.  <u>Introduction</u>

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege that: (1) the defendant made misstatements or omissions of material fact in connection with the purchase or sale of securities; (2) with scienter; (3) upon which plaintiffs relied; and (4) that such reliance was the proximate cause of the claimed injury.  <u>Lentell v. Merrill Lynch & Co.</u>, 396 F.3d 161, 172 (2d Cir. 2005) (citing <u>In re IBM Secs. Litig.</u>, 163 F.3d 102, 106 (2d Cir. 1998)).

Defendant contends that Plaintiff has failed to sufficiently allege each of these elements of his federal securities fraud cause of action.  The Court considers each element in turn and finds that the cause of action should not be dismissed at this stage of the litigation.  Based on the

---

purposes of standing] was required in order to fully effectuate the remedial purposes of Section 10(b)."  <u>Id.</u> at 265-66 (citing <u>Int'l Controls Corp. v. Vesco</u>, 490 F.2d 1334, 1346 (2d Cir. 1974)).

[3] Judge Learned Hand has cautioned against judicial interpretation and application of statutory language in a rigid way that would "frustrate[] the patent purpose" of the statute itself:

> Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish[.]

<u>Cabell v. Markham</u>, 148 F.2d 737, 739 (2d Cir. 1945).

pleadings and the arguments set forth by Defendant, this portion of Defendant's motion is properly considered as one for summary judgment.  Conversion of the motion is therefore warranted.  Limited discovery and further briefing shall be permitted as appropriate.

      2.  <u>Misstatements or Omissions of Material Fact</u>

            *a.*  <u>*Legal Standard*</u>

A plaintiff seeking a remedy under Section 10(b) and Rule 10b-5 must first show that the defendant made misstatements or omissions of material fact in connection with the purchase or sale of securities.  The materiality of a misrepresentation or omission depends on whether there is a substantial likelihood that a reasonable investor would have considered such information significant in making an investment decision.  <u>See</u> <u>Ganino v. Citizens Util. Co.</u>, 228 F.3d 154, 161 (2d Cir. 2000) (citing <u>Basic Inc. v. Levinson</u>, 485 U.S. 224, 231 (1988)); <u>Glazer v. Formica Corp.</u>, 964 F.2d 149, 154-55 (2d Cir. 1992).  "Material facts include those that affect the probable future of the company and [that] may affect the desire of investors to buy, sell or hold the company's securities."  <u>Castellano v. Young & Rubicam, Inc.</u>, 257 F.3d 171, 180 (2d Cir. 2001) (internal quotations marks omitted).  A determination of the materiality of an alleged misrepresentation "necessarily depends on all relevant circumstances."  <u>Ganino</u>, 228 F.3d at 162.

Statements that are no more than opinions or predictions of future performance generally are not sufficient to maintain a federal securities fraud cause of action.  <u>See</u> <u>Rombach v. Chang</u>, 355 F.3d 164, 174 (2d Cir. 2004); <u>see also</u> <u>In re QLT Inc. Sec. Litig.</u>, 312 F. Supp. 2d 526, 532 (S.D.N.Y. 2004) (finding that "generalized expressions of corporate optimism [are] immaterial as a matter of law and [are] therefore insufficient as the basis for an action alleging securities fraud").  The important limitation on this principle is that optimistic statements may be actionable upon a showing that "they are worded as guarantees or are supported by specific

statements of fact, or if the speaker does not genuinely or reasonably believe them." In re IBM Corp. Sec. Litig., 163 F.3d 102, 107 (2d Cir. 1998); see also Novak v. Kasaks, 216 F.3d 300, 315 (2d Cir. 2000) (finding statements that company's situation was "in good shape" or "under control," where defendants "allegedly knew the contrary was true," to be plainly false and misleading and not simply "rosy predictions" such that the statements were actionable); Lapin v. Goldman Sachs Group, Inc., 506 F. Supp. 2d 221, 240-41 (S.D.N.Y. 2006) (finding plaintiff's claim to be actionable where defendants "were aware of undisclosed facts that seriously undermined the accuracy of their professed opinions or beliefs").

Materiality is a mixed question of law and fact. TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976); Ganino, 228 F.3d at 162. Determination of whether a false or misleading statement, made in connection with the purchase or sale of securities, is material generally requires a fact-specific inquiry. See ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 197 (2d Cir. 2009); see also Miller v. Lazard, Ltd., 473 F. Supp. 2d 571, 579 (S.D.N.Y. 2007) ("Materiality is generally a question for the fact finder."). On a motion to dismiss pursuant to Rule 12(b)(6), dismissal is not proper on the ground that the alleged misrepresentations were not material "unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." JP Morgan Chase, 553 F.3d at 197 (citations and quotation marks omitted).

### b. *Application of Law to Facts*

Defendant argues that the alleged statements made by Skokos on behalf of 3FTI cannot be actionable because they constitute no more than "expressions of optimism or projection that fail to qualify as a material misrepresentation under the federal securities laws." (Def. Memo

Law Support Mot. Dismiss at 16.)[4]  The Court finds such a conclusion to be inconsistent with the facts as alleged.  In considering the circumstances and representations presented in the Amended Complaint, it would be improper to find, as a matter of law, that the alleged misstatements were garden variety optimism and puffery that could not be found material to a reasonable investor.  See JP Morgan Chase, 553 F.3d at 197; Ganino, 228 F.3d at 162.

For purposes of the instant motion, the facts alleged by Plaintiff raise a plausible inference that the alleged statements were not merely "optimistic," but rather were "worded as guarantees" or were "supported by specific statements of fact" that Skokos, acting on behalf of 3FTI, knew to be false.  See In re IBM Corp. Sec. Litig., 163 F.3d at 107; Lapin, 506 F. Supp. 2d at 240-41.  Dismissal is not warranted on this ground.

3.  Scienter

a.  *Legal Standard*

To allege scienter adequately, a plaintiff must plead "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  The requisite state of mind in a Section 10(b) and Rule 10b-5 action is an intent "to deceive, manipulate, or defraud."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313 (2007).  The inquiry is whether "all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  Id. at 322-23 (emphasis in original).

A "strong inference" of scienter exists where the allegations show that it is "more than merely plausible or reasonable."  Id. at 314.  Such an inference "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  Id.  At the pleadings stage,

---

[4] The Court found that Plaintiff's previous pleadings did not sufficiently allege that Skokos' statements were made in his capacity as an agent of 3FTI.  Defendant does not argue, and the Court does not find, that the Amended Complaint suffers from the same deficiency.

scienter may be established by alleging facts to show (1) that the defendant had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness.  See JP Morgan Chase, 553 F.3d at 198; Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 194 (2d Cir. 2008); Ganino, 228 F.3d at 168-69.

The Second Circuit has cautioned that district courts "should not employ or rely on magic words such as 'motive and opportunity,'" but may consider those elements in the scienter analysis.  Novak, 216 F.3d at 311.  A court may find that a plaintiff has met the scienter requirement on a motion to dismiss where the complaint sufficiently alleges that the defendant (1) "benefited in a concrete and personal way from the purported fraud"; (2) "engaged in deliberately illegal behavior"; (3) "knew facts or had access to information suggesting that their public statements were not accurate"; or (4) "failed to check information they had a duty to monitor."  Id.

Alternatively, "recklessness" is adequately pled by alleging facts that demonstrate "an extreme departure from the standards of ordinary care . . . to the extent that the danger [of misleading the plaintiff] was either known to the defendant or so obvious that the defendant must have been aware of it."  Id. at 308 (citing Rolf v. Blyth, Eastman Dillon & Co., 570 F.2d 38, 47 (2d Cir. 1978) (internal quotation marks omitted)).

### b.  Application of Law to Facts

The Court finds that the pleadings are sufficient to establish a "strong inference" of scienter.  Skokos is claimed to have been the 3FTI employee in charge of facilitating the sale of the company.  Am. Compl. ¶ 7.  According to Plaintiff's allegations, Skokos had knowledge of the company's financial standing and the status of sale negotiations, information that he represented fraudulently to Plaintiff.  Novak, 216 F.3d at 311; JP Morgan Chase, 553 F.3d at

198.  Skokos allegedly made specific representations about two prospective acquirers who had made "firm offers" to purchase 3FTI or its equity shares at a price that would provide a substantial profit to 3FTI investors.  Am. Compl. ¶ 7.  He stated that the purpose of Plaintiff's investment was to provide the company leverage in sales negotiations rather than "working capital."  Id. ¶¶ 8-9, 12, 30.  He claimed to have had "control" over essential elements related to Plaintiff's investment and the sales transaction.  Id. ¶¶ 13, 17-18.  Plaintiff adequately alleges that Defendant knew that these representations were false and made them with the intent to defraud.

Plaintiff has also sufficiently pled that Defendant "concretely and personally benefited" from the purported fraud.  Novak, 216 F.3d at 311.  The 3FTI company was provided with substantial cash through Plaintiff's investment, which it used to maintain its operations.  Am. Compl. ¶ 40.  Skokos allegedly benefited himself: he became Chairman of the 3FTI Board of Directors shortly after securing Plaintiff's multi-million dollar investment through the 3F Limited Partnership.  Id. ¶ 22.[5]

Further discovery may bolster or cast doubt upon the required scienter element of Plaintiff's cause of action.  At this stage of the litigation, however, Plaintiff's allegations, taken together, raise a strong inference of scienter.  See Tellabs, 551 U.S. at 314, 322-23.  Dismissal is not warranted on this ground.

4.  Reasonableness of Plaintiff's Reliance

---

[5] Defendant also asserts an *in pari delicto* defense, arguing that, as a direct result of Plaintiff's own actions, the Plaintiff "bears at least substantially equal responsibility for the violations he seeks to redress," and dismissal of the securities fraud claims "would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public." (Def. Memo Law Support Mot. Dismiss at 19, n.5 (citing Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310-11 (1985)).  In Bateman Eichler, the Court emphasized that plaintiff-investors had violated the same laws under which they sought recovery against defendants.  472 U.S. at 304.  In the case before this Court, there is no support for a finding of "substantially equal responsibility" that would preclude a remedy based on the *in pari delicto* defense.

a. *Legal Standard*

A plaintiff bringing a securities fraud claim under Section 10(b) and Rule 10b-5 must next establish that he reasonably relied on the alleged misstatements, or omissions, of a material fact.  See Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 195 (2d Cir. 2003) (citing Harsco Corp. v. Segui, 91 F.3d 337, 342 (2d Cir. 1996)).  In assessing the reasonableness of a plaintiff's alleged reliance, the court must consider the context of the transaction as a whole, including "factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them."  Id.

Courts have held that an investor does not "reasonably" rely on a misrepresentation "if, through minimal diligence, the investor should have discovered the truth" in situations in which important documents were readily available but not reviewed, Starr v. Georgeson Shareholder, Inc., 412 F.3d 103, 109 (2d Cir. 2005), or where the plaintiff was a "sophisticated investor" who failed to take reasonable steps to access critical information related to the transaction in question. See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98-99 (2d Cir. 1997); JP Morgan Chase Bank v. Winnick, 350 F. Supp. 2d 393, 406 (S.D.N.Y. 2004) (noting that "sophisticated business entities are held to a higher standard").  "Succinctly put, a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament."  Emergent Capital, 343 F.3d at 195.  Yet, a plaintiff's "long-standing close, personal relationship" with the individual who allegedly made fraudulent statements, as opposed to an "arms length relationship between client and service provider . . . may well bolster the [plaintiff's] argument that [the] reliance was reasonable."  Parsons & Whittemore Enterprises Corp. v. Schwartz, 387 F. Supp. 2d 368, 374 (S.D.N.Y. 2005).

The reasonableness of a plaintiff's reliance on alleged misrepresentations "is intensely fact-specific and generally considered inappropriate for determination on a motion to dismiss." Maloul v. Berkowitz, No. 07-8525, 2008 WL 2876532, at *2 (S.D.N.Y. July 23, 2008); see also Doehla v. Wathne Limited, Inc., No. 98-6087, 1999 WL 566311, at *10 (S.D.N.Y. Aug. 03, 1999) (collecting cases).

### b. *Application of Law to Facts*

Plaintiff has sufficiently alleged reasonable reliance in his Amended Complaint.  Skokos, a 3FTI employee assigned to negotiate the sale of the company, purportedly made numerous representations and assurances to Plaintiff about the company's financial position and the nature of Plaintiff's investment.  The alleged facts, including Plaintiff and Skokos' established business and personal relationship as well as the timeline and details of the transaction, satisfy the pleading requirements with respect to the element of reasonable reliance.[6]

Defendant's references to Plaintiff's professional background in the financial industry and relevant knowledge of securities transactions may be germane to a factual inquiry on this element.  They are, however, beyond the scope of the instant motion.  Further discovery may provide evidence that, when all circumstances are considered, diminish to the vanishing point Plaintiff's argument that his reliance on Skokos' representations was reasonable.  Such a determination is premature on the instant motion to dismiss.

### 5.  Loss Causation and Damages

Defendant makes the additional argument that Plaintiff has failed to assert an actual loss and that such a deficiency is fatal to his securities fraud claim.  Plaintiff does "have the burden of

---

[6] None of the alleged misstatements by 3FTI and Skokos were corrected or otherwise addressed, whether explicitly or implicitly, in the 3F Limited Partnership Agreement.  The agreement's merger clause therefore cannot foreclose a finding of reasonable reliance on its own.

proving that the act or omission of the defendant . . . caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4).   In his Amended Complaint, Plaintiff satisfies this pleading requirement, having alleged that as a result of Skokos' representations, Plaintiff was fraudulently induced to invest and consequently suffered a concrete harm.  His damages are based on the claim that his $4 million investment has been "substantially depleted" and, in part, "burned through" by the company.  Am. Compl. ¶ 42.  Greater specificity in the calculation of any alleged damages will be required at future stages of the litigation.  Dismissal is nonetheless unwarranted on this ground.

    6.  Conclusion

    The factual allegations in Plaintiff's Amended Complaint lift his claims to the level of "plausibility." Iqbal, 129 S.Ct. at 1949-50; Twombly, 550 U.S. at 570.   The Court finds that the Amended Complaint meets the pleading requirements set forth both in the Private Securities Litigation Reform Act and Rule 9(b) of the Federal Rules of Civil Procedure.  Discovery may reveal that Plaintiff is unable to present sufficient evidence as to one or more of the above elements of his federal securities fraud action to establish a right to relief.  "But that is the point of discovery: to see whether plaintiff's well-pleaded factual allegations are true." Billhofer v. Flamel Technologies, SA, No. 07-9920, 2009 WL 3241399, at *12 (S.D.N.Y. Oct. 05, 2009). The motion to dismiss Plaintiff's federal securities fraud action on the ground that Plaintiff fails to establish the required elements of such a claim therefore warrants conversion to a motion for summary judgment pursuant to Rule 56.

**C.  Common Law Fraud**

    1.  Legal Standard

To prevail on a fraud claim under New York State law, the plaintiff must establish (1) a material false representation or omission of an existing fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, (4) reasonable reliance, and (5) damages.  Dealtime.com v. McNulty, 123 F. Supp. 2d 750, 758 (S.D.N.Y. 2000) (citing Schlaifer Nance & Co., Inc. v. Estate of Warhol, 927 F. Supp. 650, 660 (S.D.N.Y. 1996).  The parties agree that analysis of Plaintiff's common law fraud claim is essentially identical to the securities fraud claim brought pursuant to Section 10(b) and Rule 10b-5.  See Rich v. Maidstone Fin., Inc., No. 98-2569, 2002 WL 31867724, at *13 (S.D.N.Y. Dec. 20, 2002) (citing Morse v. Weingarten, 777 F. Supp. 312, 319 (S.D.N.Y. 1991)).

2.   Application of Law to Facts

Because the Court finds that Plaintiff has sufficiently pled his claim for securities fraud pursuant to Section 10(b) and Rule 10b-5, the state law fraud claim is also supported by sufficient factual allegations to survive Defendant's present motion.  The motion to dismiss Plaintiff's fraud claim brought under New York State law, like the federal securities fraud claim, warrants conversion to a motion for summary judgment pursuant to Rule 56.

**D.  Negligent Misrepresentation**

An increasing number of courts have found that the Martin Act, N.Y. Gen. Bus. Law § 352, New York's "Blue Sky" law governing securities fraud, preempts a private right of action for common law claims that do not require proof of intent or scienter, including claims of negligent misrepresentation.  See CPC Int'l Inc. v. McKesson Corp., 514 N.E. 2d 116, 118-19 (N.Y. 1987); Rego Park Gardens Owners Ass'n v. Rego Park Gardens Assocs., 595 N.Y.S. 2d 492, 494 (2d Dep't 1993); Eagle Tenants Corp. v. Fishbein, 582 N.Y.S. 2d 218, 219 (2d Dep't 1992); Horn v. 440 E. 57th Co., 547 N.Y.S. 2d 1, 5 (2d Dep't 1989). Courts have dismissed such

state law claims on the grounds that "permitting them to proceed would be equivalent to permitting a private claim under the Act." Spirit Partners, L.P. v. audiohighway.com, No. 99-9020, 2000 WL 685022, at *6 (S.D.N.Y. May 25, 2000) (internal quotation marks and citations omitted) (dismissing a negligent misrepresentation claim as precluded by the Martin Act).

Federal courts have, almost without exception, adopted this position on Martin Act preemption. See Castellano, 257 F.3d at 190 & n.9 (affirming dismissal of common law breach of fiduciary duty claim based on Martin Act preemption grounds and noting that, while the New York Court of Appeals has not explicitly considered the issue, "principles of federalism and respect for state courts' interpretation of their own laws" counsel in favor of following the clear state court trend in support of finding preemption to apply); Kassover v. UBS AG, 619 F. Supp. 2d 28, 36 (S.D.N.Y. 2008) (holding that negligent misrepresentation claim based on securities transactions is preempted by the Martin Act); Dover Ltd. v. A.B. Watley, Inc., 423 F. Supp. 2d 303, 331 (S.D.N.Y. 2006) (same); Marcus v. Frome, 329 F. Supp. 2d 464, 475-76 (S.D.N.Y. 2004) (same); Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC, No. 02-0767, 2003 WL 22052894 at *3 (S.D.N.Y. Sept. 2, 2003) (collecting cases applying Martin Act preemption).

Plaintiffs cite one decision in this district, Cromer Fin. Ltd. v. Berger, No. 00-2498, 2001 WL 1112548, at *4 (S.D.N.Y. Sept. 19, 2001), for the proposition that the Martin Act should not preclude common law rights of action such as that for negligent misrepresentation. That case, however, "stand[s] as [a] solitary island[] in a stream of contrary opinion." Nanopierce Techs., 2003 WL 22052894 at *4.

Given the weight of legal authority in favor of Martin Act preemption of a private right of action for negligent misrepresentation and other common law claims that do not require proof of scienter, dismissal of Plaintiff's negligent misrepresentation claim is appropriate.

## VI. Conclusion

Defendant's motion to dismiss is DENIED in part and GRANTED in part.  (D.E. 41.) The motion to dismiss Plaintiff's federal securities fraud claim based on lack of standing is DENIED.  The motion to dismiss the negligent misrepresentation claim based on Martin Act preemption is GRANTED.

Defendant's arguments for dismissal based on Plaintiff's failure to establish specific elements of the federal and state law securities fraud claims is converted to a motion for summary judgment pursuant to Rule 56.  The Court provides notice to the parties of conversion of this portion of Defendant's instant motion as required by the Federal Rules of Civil Procedure. In light of the Court's decision to convert the motion, the parties shall be permitted to conduct limited discovery.  Discovery shall be completed no later than February 26, 2010.  Any discovery disputes are referred to the magistrate judge.  Defendant shall file any supplementary briefing to its motion for summary judgment, along with its Rule 56.1 statement, by March 12, 2010.  Plaintiff shall file any supplementary briefing on summary judgment, and its Rule 56.1 statement, by March 26, 2010.  Defendant shall submit its reply no later than April 9, 2010. SO ORDERED.

Dated: New York, New York
　　　　December **2** , 2009

　　　　　　　　　　　　　　　　Kimba M. Wood
　　　　　　　　　　　　　　　　United States District Judge

24